IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MONICA ABBOUD, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>AGENTRA, LLC, a Texas limited liability company,<br><br>     Defendant. | Case No. 3:19-cv-00120-<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

## I. INTRODUCTION

This case presents a textbook class action. Courts across the country have recognized that claims brought under the Telephone Consumer Protection Act (TCPA) are well-suited for class certification. *See Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("In the context of the TCPA, the class action device likely is the optical means of forcing corporations to internalize the social costs of their actions.") This case against Defendant Agentra, LLC ("Defendant" or "Agentra") is no different.

Agentra is an enroller and service provider of health insurance products. In its zeal to gain an advantage in this competitive space, Agentra contracts with third-parties to drive leads to Agentra for enrollment. In doing so, Agentra turns a blind eye to the telemarketing practices of its agents. Agentra does nothing to monitor the lead sources of its agents, it does not provide any guidance to its agents on how to vet lead sources, it does not require agents to periodically report on their lead generation and telemarketing practices, and it does nothing to monitor the lead

1

sources being used to drive traffic to Agentra. (See "Rule 30(b)(6) Transcript, attached hereto as Ex. A, 74:21-25; 75:1-23.) Such a "blind eye" arrangement is devised to allow Agentra to retain all of the benefits of illegal telemarketing (*i.e.*, customers) while attempting to shed the risk associated with using illegal telemarketing tactics to generate them.

Putting the actions of Agentra's agents and Agentra's lack of oversight of its agents aside, Plaintiff received two (2) text messages from Agentra, which Agentra's Rule 30(b)(6) designee admitted were sent "automatically" by its own internal CRM system. (Ex. A., 55:1-25; 56:1-25; 57:1-17).

Agentra contests liability and denies responsibility for any TCPA violations committed on its behalf, but the question at this stage is not whether Plaintiff prevails on the merits. This is a question for another day. At this stage, the question is whether the claims can be resolved fairly and efficiently on a classwide basis. The answer to this question is a resounding "yes".

As such, and as explained below, Agentra has violated the TCPA uniformly with respect to the entire Class. This Court should therefore grant certification and provide Plaintiff with a deadline for proposing a reasonable Notice Plan. To the extent the Court determines that additional discovery is required to demonstrate satisfaction of any consideration under Federal Rule 23 or Local Rule 23.2, Plaintiff respectfully requests that the Court grant him leave to take such appropriate discovery and conditionally certify, or defer ruling on certification, until such discovery is completed and Plaintiff has presented a supplemental motion for the Court's consideration that is based upon a more complete record. As stated in Plaintiff's February 14, 2020 Motion to Extend Deadlines to Complete Fact Discovery and File Papers Related to Class Certification (dkt. 35), Defendant's Rule 30(b)(6) testimony raised significant questions about

Defendant Agentra's responses to written discovery in this case and illustrated that crucial information has yet to be disclosed by Defendant. Plaintiff served a discovery letter on February 12, 2020 addressing these issues, but has yet to hear back from Defendant on the issues raised. Plaintiff maintains that the Motion for an extension of time should be granted so that the Parties can work through the discovery issues that were discovered during the Rule 30(b)(6) deposition and certification can be decided on a complete record.

## II.     BACKGROUND FACTS

This lawsuit challenges phone calls and text messages that Agentra (or a third-party acting on its behalf and more its benefit) placed to Plaintiff Monica Abboud ("Plaintiff" or "Abboud") and other cellphone users in violation of the Telephone Consumer Protection Act.

On April 12, 2019, the Court entered its Class Certification Scheduling Order entering the following relevant deadlines: (1) deadline for mediation of December 2, 2019; (2) Discovery due: January 13, 2020; and (3) Motion for Class Certification due by January 30, 2020. (Dkt. 25.) On May 31, 2019, Plaintiff served his first set of interrogatories, requests to produce, and requests for admission. Defendant responded to Plaintiff's written discovery requests on July 1, 2019.

On December 2, 2019, Defendant filed an Unopposed Motion to Extend Mediation Deadline, requesting that the Court extend the mediation deadline from December 2, 2019 to January 24, 2020, which the Court granted. (Dkt. 30.)  Subsequently, on January 7, 2020, the Parties filed a Joint Motion to Extend Discovery and Class Certification Deadlines, until February 14, 2020 and March 2, 2020 respectfully. (Dkt. 32.)  The Parties stated that "this extension allows the Parties to maximize the chance of a productive mediation by providing

opportunity to defer costs relating to fact discovery and class certification briefing until after mediation". (*See id*.) The Court granted this motion. (Dkt. 33.) The Parties thereafter participated in an unsuccessful mediation session on January 24, 2020. (*See* Dkt. 34.)

Plaintiff was called by two separate agents of Agentra: Health Care Enrollment Center (an apparent d/b/a of Stellar Communications, Inc. and Jake Gabbard), and Life and Health Insurance Services, a company run by Jason Espinoza. (*See* Exhibit B.) At the Rule 30(b)(6) deposition, Agentra's designee admitted that Agentra doesn't monitor its agents' telemarketing behaviors, simply stating that "these are independent agents". (Ex. A 75:11-12). Agentra's corporate representative states that Agentra only asks about the lead sources used by its agents "if there was a violation, a TCPA violation . . ." (Ex. A 75:9-23). In other words, Agentra only bothers monitoring its agents' telemarketing practices after a violation has already occurred. (See Ex. A 75:21-23.)

Agentra's designee *did* admit, however, that the text messages Plaintiff received were sent "automatically" through its own internal "CRM" system. Specifically, Agentra's designee testified:

> A. This is a text message that would have come from the CRM after an independent agent enrolls a consumer into our CRM. The CRM sends a text message to the individual with an agreement - - enrollment agreement for them to, if they agree, sign - - digitally sign.
>
> Q. When you say "the CRM," we're referring again to that online software that houses information about enrollees and agents?
>
> A. Correct.
>
> Q. So once an agent loads information into the CRM about a person who is in the process of enrolling - -
>
> A. Yes.

4

>Q. - - the system sends out text messages like this?
>
>A. Yes. The agent, as part of the enrollment process, advises the consumer that they will receive a text message or email from Agentra with an enrollment confirmation to - - to complete the enrollment to sign the agree - - digitally sign the agreement.
>
>Q. Understood. And that is sent by Agentra's CRM software?
>
>A. Correct.
>
>Q. Okay. How are the text messages sent? Does someone have to manually type in the texts or is it an automatic thing that goes out from the CRM as soon as someone's enrolled?
>
>A. Once - - once the agent completes the enrollment, it automatically goes out.

(Ex. A 55:1-25; 56:1-4.)

To make matters worse, Agentra admits that it didn't have prior express consent to text Abboud. "Defendant admits that prior to Plaintiff Monica Abboud's subscription to certain insurance policies marketed by independent contractors of Defendant, Defendant did not possess any prior express written consent to place telemarketing calls or text message calls to Plaintiff Monica Abboud." (*See* Response to RTA No. 1, attached hereto as Ex. C.)[1]

Thus, in an effort to boost sales and attract new customers, Agentra allowed its agents (including Health Care Enrollment Center and Life and Health Insurance Services) to have carte blanche authority to market as the agents sdee fit. Additionally, Agentra programed its own internal CRM system to send text message automatically regarding enrollment to consumers such as Abboud who were called by Agentra's agents without their consent.  In the end, Agentra

---

[1] Agentra's Rule 30(b)(6) designee admitted that Plaintiff didn't actually subscribe. "[Abboud] did not sign the agreement, so it should never have gone active. Her credit card was charged and it should have. That was an error." (Ex. A 71:6-17.)

5

blasted out text messages to hundreds or thousands of recipients without any proof that anyone ever consented to receiving them, and failed to monitor the calling practices of its agents such that it can be held liable for their TCPA violations. As such, and as set forth more fully below, the record firmly supports certification.

## III.   ARGUMENT

Class certification is appropriate where the class is ascertainable and where the record shows that all of the enumerated requirements of Rule 23(a) and at least one section of Rule 23(b)(3) can be satisfied. As explained below, that is precisely the case here, and certification should be granted.

>    **A.    The Class is ascertainable—Class members can be identified through reference to objective criteria, including a combination of Agentra's records, the records of its agents, and Class member declarations and phone records.**

First, the existence of an ascertainable class is an implied prerequisite to class certification under Rule 23. *Edwards v. Zenimax Media Inc.*, No. 12-CV-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012). A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a class member." *Id.* (citation omitted.) As such, "it is not fatal for class definition purposes if a court must inquire into individual records, so long as 'the inquiry is not so daunting as to make the class definition insufficient.'" *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) (quoting *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 348 (N.D. Ill. 2008)); *see also Rhodes v. Cracker Barrel Old Country Store, Inc.*, 213 F.R.D. 619, 674 (N.D. Ga. 2003) ("The class simply must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.") (quotations omitted.)

6

Indeed, "a court need not ascertain 'absent class members' actual identities ... before a class can be certified... rather, it is enough that the class be ascertain*able*'... with class members to be identified during a claims administration process if the class prevails.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (quoting *Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D. 408, 417 (N.D. Ill. 2012)). Rather, if the court "can ascertain the members of the class by reference to objective criteria, then the class is adequately defined." *Edwards*, 2012 WL 4378219, at *4; *see* 5 James Wm. Moore et al., Moore's Federal Practice*,* ¶ 23.21[1] (3d ed. 2001) ("The identity of class members must be ascertainable by reference to objective criteria."); *see also G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class sufficiently identifiable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent"); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009) (finding class sufficiently identifiable in a TCPA fax case through fax numbers on transmission logs).

Conversely, a class definition that requires the assessment of subjective criteria, like the class members' states of mind, will not be certified. *Lau v. Arrow Fin. Servs., LLC*, 245 F.R.D. 620, 624 (N.D. Ill. 2007); *cf DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (refusing to certify class of all "residents of this State active in the 'peace movement'").

With these principles in mind, the proposed Classes are ascertainable. That is, Abboud seeks to certify two Classes that consists of the following people:

> **Text Class**: All persons in the United States who, from January 15, 2015 through the date notice is sent to the Class, received one or more text messages on their cellular telephone, via Agentra's CRM system, for the same purpose as the text messages at issue were sent to Plaintiff, and for whom Agentra has no record of

>prior express consent.
>
>**Agent Class**: All persons in the United States who, from January 15, 2015 through the date notice is sent to the Class, Health Care Enrollment Center or Life and Health Insurance Services (or any of their sub-dealers, vendors, lead generators, or agents) called, on the person's cellular telephone, for the purpose of promoting Agentra's insurance products or that could have resulted in the purchase of an Agentra insurance product, using the same equipment as was used to call Plaintiff, for whom Defendant claims prior express written consent was obtained in the same manner as Defendant claims prior express written consent was obtained to call Plaintiff, or for whom Defendant has no record of prior express written consent.

Class membership is based on objective criteria. Whether someone is in the United States and received a text message or phone call during the relevant time period are all wholly objective inquiries—none has a subjective component. Likewise, whether the messages were sent via Agentra's CRM system or whether Agentra has any record of prior express consent is neither subjective nor difficult to determine.

As explained above, Agentra admits that the text message at issue were sent via its own internal CRM system. As such, the Text Class is identifiable. Agentra can review its own database and determine who was sent an applicable text message through the system.

Likewise, Agentra can review its database to isolate which persons were added to the database by Health Care Enrollment Center or Life and Health Insurance Services. Following a search for updated addresses, notice of these proceedings could be mailed to most of the Classes.

To the extent there remains any doubt, Class Members can provide records, including affidavits and documents including phone bills and perhaps screenshots of the texts themselves, to establish class membership. Indeed, "'It is enough that the class be ascertain*able*' with class members to be identified during a claims administration process if the class prevails." *Birchmeier*, 302 F.R.D. at 245 (*citing Boundas v. Abercrombie & Fitch Stores, Inc.,* 280 F.R.D.

408, 417 (N.D. Ill. 2012) ("a court need not ascertain "absent class members' actual identities ... before a class can be certified.") Documentary evidence, together with sworn declarations from class members, can be used to show class membership. *Birchmeier*, 302 F.R.D. 240, 249–50 (N.D. Ill. 2014).[2]

As a final point, Agentra should not be permitted to rely in any way on its own failure to maintain adequate records as a basis for denying certification, particularly on ascertainability grounds. As *Birchmeier* explains:

> In other words, defendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping. This would result in an artificial class definition that would leave out individuals who actually received the calls in question—an unquestionably objective criterion—and who possess a record that is at least circumstantial evidence of class membership, a picture they can complete with their own sworn statements. Doing this—or declining to certify a class altogether, as defendants propose—would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct. The Court does not agree that the classes should be limited in the way defendants propose.

*Birchmeier*, 302 F.R.D. at 250. Indeed:

> Refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions. See *Daniels v. Hollister Co.,* 440 N.J.Super. 359, 113 A.3d 796, 801 (N.J.App.2015) ("Ascertainability ... is particularly misguided when applied to a case where any difficulties encountered in identifying class members are a consequence of a defendant's own acts or omissions.... Allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies ... is not in harmony with the principles governing class actions.")

---

[2] Importantly, "a class is not rendered unascertainable merely because an analysis of data is necessary to determine class membership. *See Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("[T]he class can be identified through an examination of the individual files of each of the participants. The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement."); *In re TFT–LCD (Flat Panel) Antitrust Litig.,* 267 F.R.D. 583, 592 (N.D. Cal. 2010).

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016); *see also Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *6 (S.D. Ill. June 21, 2016) ("Sterling also contends that there is no way to determine consent due to lack of record keeping. However, Sterling may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements in order to defeat class certification in this matter.")

In short, class membership is objectively ascertainable.

**B.      The Classes meets each of the requirements of Rule 23(a).**

The Classes are numerous, and members share common issues. Further, Abboud has typical claims, and she, along with her counsel, will adequately represent the Classes.

**1.      The Classes consists of thousands of businesses.**

The proposed Classes are sufficiently numerous as well so as to satisfy Federal Rule 23(a)(1). Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (explaining that, in general, numerosity is satisfied when the class comprises forty or more members). A proponent of certification need not identify the exact number of class members to satisfy numerosity; rather, the moving party must "produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978)*; see* Newberg on Class Actions § 3:5, 243-46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.")

Generally, forty (40) or more members suffices, *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007), and classes that number in the thousands "clearly" satisfy the numerosity requirement. *See, e.g., Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669, 674 (N.D. Ill. 1989); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding numerosity requirement satisfied in TCPA junk fax case involving the transmission of 3,000 unsolicited faxes). Precision isn't required, nor is hard data. *See, e.g.*, *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002) (court may use common sense when determining whether joinder is impractical.)

Applied here, the exact number of Class members at issue is unknown at this time because of Agentra's failure to produce adequate responses to discovery. (*See* Dkt. 35.) However, common sense dictates that numerosity is satisfied. Agentra's CRM system was programmed to automatically send text messages regarding enrollment to persons whose information was loaded into its CRM system. This naturally must constitute a significant number of persons who persons. Similarly, Agentra's agents, in order to be profitable, must have called more than 40 persons to pitch an Agentra product. As such, common sense dictates that there are over 40 class members so as to render joinder impracticable in satisfaction of Rule 23(a)(1). The exact numbers can be determined once Agentra produces adequate discovery responses, or is forced to participate in subsequent class-related discovery.

### 2. Class members share common issues that drive the resolution of the claims.

Next, common issues abound in satisfaction of Rule 23(a)(2). These include whether Agentra is liable for the telemarketing conduct of its agents, whether the calls of its agents were placed to encourage the purchase of Agentra's goods or services, whether Agentra's CRM

constitutes an automatic telephone dialing system ("ATDS") under the TCPA, whether Agentra's agents dialing systems constitute an ATDS, whether Agentra had prior express consent to place the text messages at issue, and whether Agentra acted willfully. All are common issues capable of class wide resolution. Commonality, requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). That is, the claims must "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Under commonality's "permissive" standard, "'factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Joseph v. Gen. Motors Corp.*, 109 F.R.D. 635, 640 (D. Colo. 1986) (*quoting Milonas v. Williams,* 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied,* 460 U.S. 1069 (1983)); *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) ("[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists.")

As the Supreme Court explained in *Dukes*, "[w]hat matters to class certification. . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Dukes*, 131 S. Ct. at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)). Commonality requires that only a single issue be common to the class. *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-CV-02757-WYD-KMT, 2012 WL 1378531, at *3 (D. Colo. Apr. 20, 2012); *Dukes*, 131 S.Ct. at 2545, 2556 ("[E]ven a single common question will do."); *In re First Alliance Mortg. Co.*, 471 F.3d 977,

990-91 (9th Cir. 2006) ("Rule 23(a)(2) commonality may be met by a single issue of law or fact."). Identical issues aren't required--rather, the common issues must be susceptible to generalized, as opposed to specific, proofs. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

As explained below, several common issues are present for which the litigation will produce common *answers* across the entire class in satisfaction of the commonality here.

### 3. Typicality is met as well—like every other member of the Class, Abboud received Agentra's texts and was called by Agentra's agents, and Agentra has no record of prior express consent to text her.

Abboud also satisfies Rule 23(a)(3)'s requirement of typicality. "Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected." *Colo. Cross-Disability Coal.*, 2012 WL 1378531, at *11-12. Typicality "does not mean that the claims of the class representative[s] must be identical or substantially identical to those of the absent class members." 5 NEWBERG ON CLASS ACTIONS, § 24.25 (3d ed. 1992); *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) (citing *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975) ("courts have consistently ruled that even though it appears that the named plaintiffs have not suffered discrimination, this fact does not prevent them from representing the class") (citations omitted)).

Under the Rule's permissive standards, "Plaintiffs need only show, as they have done here, that their interests are compatible and not antagonistic to the interests of the other class members." *Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1248 (D. Colo. 1983); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001). That is, "[s]o long as there is a nexus between the class representatives' claims or defenses and the common questions of fact or law

which unite the class, the typicality requirement is satisfied." *Kohn v. Am. Hous. Found., Inc.*, 178 F.R.D. 536, 541 (D. Colo. 1998); *see also* 1 Newberg on Class Actions § 3:29 (5th ed.) ("[T]ypicality will be satisfied so long as "the named representatives' claims share the same essential characteristics as the claims of the class at large."); *Joseph*, 109 F.R.D. at 639-40 ("It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory." ) (quoting *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975)).

Hence, "[e]ven though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). The test is whether other class members have the same or similar injury and whether the action is based on conduct that is not unique to the named plaintiffs. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "A finding of commonality will ordinarily support a finding of typicality." *Barefield v. Chevron U.S.A., Inc.*, No. 86-CV-2427, 1987 WL 65054, at *5 (N.D. Cal. Sept. 9, 1987).

Here, Abboud's claims are typical of those of the other class members. She received the same texts from the defendant and calls from its agents that everyone else received. The claim is that the defendant acted the same way as to all putative class members. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Further, Abboud is a member of the Class. *See*

14

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."); *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 437 (W.D. Wash. 2000) (finding typicality for class on claims of breach of contract, stating that "[o]n a very basic and elementary level, [plaintiff] seeks to have the defendants charge him what he believes to be the correct interest rate, and to make sure that they do in the future for both himself and others like him. . . should he be successful, and that is the crux of [the typicality] requirement.").

As such, the Court should find Rule 23(a)(3) satisfied here as well.

### 4. Both Abboud and her counsel are adequate to serve as Class representatives.

The final requirement of Rule 23(a) ensures the plaintiff "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Abboud has stepped forward, put her name out, and done everything asked of her as a named plaintiff. Likewise, proposed Class Counsel have no conflicts either and unquestionably has experience in prosecuting these types of cases. (*See* "Firm Resume of Woodrow & Peluso, LLC," a true and accurate copy of which is attached hereto as Ex. D.)

In the end, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Joseph*, 109 F.R.D. at 640 (quoting 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1768 at 638–39). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir.


1979). Here there are no actual conflicts and Rule 23(a)(4) is satisfied.

### C. The Class also meets the requirements of Rule 23(b)(3) as well.

In addition to meeting each of the requirements of Rule 23(a), the record also establishes that certification is appropriate under Rule 23(b)(3). As explained below, the common issues in the case predominate over any individualized issues. Additionally, a class action is superior, and the Class doesn't present any manageability concerns.

### 1. The common questions identified above cut to the heart of the litigation and predominate over any supposed individualized issues.

The record also shows predominance of the common issues. Predominance is similar to commonality but requires a "far more demanding" inquiry than "Rule 23(a)'s commonality requirement." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 724 (N.D. Ill. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and ... can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 814. (*quoting* 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). Individual questions need not be absent, however. (*Id.*) (explaining that the rule requires only that individual questions not predominate over the common questions.) Rather, common questions predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2nd Cir.2006), *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir.2000). *Messner*, 669 F.3d at 814. Ultimately, predominance "trains on the legal or factual questions that qualify each class member's case as a genuine controversy" and "tests whether proposed classes

are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 624.

The common questions identified above predominate over any supposed individualized issues. Each are common issues that cut to the heart of the case that aren't trumped by any individual concerns. Ultimately, even if there were some individual issues, that does not preclude certification so long as the class-wide issues "are more substantial than the issues subject to only individualized proof." *Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *8-9 (D. Colo. May 28, 2013). That is the case here. As such, the Court should find Rule 23(b)(3) predominance met as well.

> **2.  A Class action here is plainly manageable and superior to any other supposed methods of adjudicating the controversy.**

As a final consideration, the Court should also find that a class action would be both manageable and superior. Rule 23(b)(3) further requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Matters pertinent to this inquiry include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action."

*Id*. Applied to the instant facts, no class members have any interest in individually controlling the prosecution of separate actions. The costs simply outweigh the benefits of individual litigation. Indeed, the "class action device is frequently superior where proceeding individually would be difficult for class members with small claims." *Belote*, 2013 WL 2317243 (citing *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010).

In this case, "the class-action device saves the resources of both the courts and the parties

17

by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quotation omitted); *Agne*, 286 F.R.D. at 571-72 (addressing Rule 23(b)(3) factors in a similar TCPA case and finding class treatment superior to individual actions); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 54-55 (D. Conn. 2000) (rejecting argument that individual actions would better serve class members in a TCPA claim). Finally, a class wouldn't be unmanageable.

## IV. CONCLUSION

The proposed Classes are worthy of certification here. The Classes are defined with reference to solely objective criteria, are numerous and their members share common legal and factual issues. Abboud is typical and both her and her counsel will adequately protect the Class Members' interests. Finally, the common issues predominate and a class action is superior and manageable. As such, this Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

   \*   \*   \*   \*   \*   \*

Dated: March 2, 2020      Respectfully submitted,

          By:  /s/ Patrick H. Peluso
            One of Plaintiff's Attorneys

          Steven L. Woodrow\*
          swoodrow@woodrowpeluso.com
          Patrick H. Peluso\*
          ppeluso@woodrowpeluso.com
          Taylor T. Smith\*
          tsmith@woodrowpeluso.com
          Woodrow & Peluso, LLC
          3900 East Mexico Ave., Suite 300
          Denver, Colorado 80210

Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Robert B. Kleinman
robert@commonsensecounsel.com
Breanne Cope
breanne@commonsensecounsel.com
Common Sense Counsel LLP
404 West 7th Street
Austin, Texas 78701
Telephone: (512) 299-5329
Facsimile: (512) 628-3390

Brooke Frances Cohen
brookefcohen@gmail.com
4334 University Blvd
Dallas, TX 75205
Telephone: (214) 384-0537

*Attorneys for Plaintiff and the Class*

*\* Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's electronic filing system to all counsel of record.

Date: March 2, 2020

<div style="text-align:right">/s/ Patrick H. Peluso</div>