IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MONICA ABBOUD, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>AGENTRA, LLC, a Texas limited liability company,<br><br>      Defendant. | Case No. 3:19-cv-00120-<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |

**I. INTRODUCTION**

Defendant Agentra, LLC's ("Defendant" or "Agentra") Opposition to Plaintiff Monica Abboud's ("Plaintiff" or "Abboud") Motion for Class Certification attacks both proposed Classes. As it relates to the Text Class, Agentra attacks the predominance element only, claiming that Plaintiff supposedly cannot "demonstrate a viable theory class-wide proof" as it relates to consent. (Dkt. 39 at 9.) As for the Agent Class, Agentra's attack is broader; supposedly certification is defeated here because Agentra has no way to tell if an agent called to promote Agentra's products, Agentra's database does not show whether a person was called on their cellphone, and Agenta does not know what dialing equipment its agents used. (Dkt. 39 at 5-8.)

None of these assertions has merit. As for the Text Class, Agentra's response rests on one primary issue: the supposed need for individual inquiries into whether each Class member provided prior express consent. Fortunately for Plaintiff and the members of the Text Class, no individual issues predominate here. That is, Agentra supposedly obtained consent from all class members using the exact same course of conduct: its practice of supposedly having its sales

1

agents advise consumers that they will receive a text message or email from Agentra in order to sign Agentra's agreement. (Dkt. 39 at 10.) As such, this is <u>not</u> a case where consent was supposedly obtained in different ways. Rather, each member of the class and Plaintiff provided alleged prior express consent through the exact same corporate practice. In other words, this is a textbook class action and Agentra's efforts to defeat predominance fail. And relatedly, aside from describing its process for securing consent to send the text messages at issue that it (self-servingly) claims it utilized, Agentra hasn't produced a single piece of evidence suggesting that any members of the proposed class actually provided prior express consent to receive its texts. Instead, Agentra makes vague assertions about the possibility of consent. In reality, Defendant failed to maintain adequate records to evidence the supposed consent it claims it obtained—class action defendants should not be able to skirt liability by keeping shoddy business records.

Indeed, by stating that for the issues of prior express consent "Plaintiff cannot demonstrate a viable theory of class-wide proof" (dkt. 39. at 9), Agentra misapplies its own burden. That is, consent is an affirmative defense, on which *Agentra* bears the burden of proof. At the class certification stage, Abboud only bears a burden to demonstrate that the claims and defenses are capable of resolution on a class basis using common evidence. That is precisely the case here. With a single stroke, the Court can adjudicate the claims of each person who received Agentra's texts where Agentra supposedly obtained consent via its standard practice of obtaining such supposed oral consent via its agents. Because Agentra treated Plaintiff and members of the proposed class in an identical manner, Plaintiff has plainly met her burden to demonstrate that all claims and defenses are capable of resolution on a class basis. For everyone the question will be whether Agentra's process was sufficient.

As for Agentra's arguments regarding the Agent Class, they similarly fall flat. Proving phone service type is simple, Agentra's 1Enrollment data regarding consumers who were input into the database is a sufficient launching point and can be supplemented by class member declarations and other third-party evidence, and the question of whether Agentra's agents' dialers constitute automatic telephone dialing systems is a common question for the class.

As such, and as explained further below, the Court should certify the Classes here.

## II. ARGUMENT

### A. The predominance requirement is plainly met for the Text Class.

For its only argument against certification of the Text Class, Agentra contends that Abboud cannot satisfy the predominance requirement because, according only to Agentra, individualized inquiries are needed across the Class on the issue of prior express consent. (Dkt. 39 at 9-10.) This contention is incorrect.

"Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA on a case-by-case basis after evaluating the *specific evidence available to prove consent*." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014). Furthermore, when it comes to the issue of consent, "[f]actual variations amongst class members' claims, however, do not necessarily defeat class certification as long as the representatives claims are based on *the same course of conduct and legal theory* as the class as a whole." *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324 *5 (N.D. Ill. Aug. 20, 2009) (emphasis added) (citation omitted); *see also Palm Beach Gold Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("the Court finds that common issues predominate over any individual issues that may arise. The facts necessary to establish liability relate to

Defendant's *common course of conduct* and the transmissions of the faxes, and not to issues with individual class members.") (emphasis added).

The case of *Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corporation* (hereafter "*Emery Wilson*"), in which the court found predominance was met based on a common course of conduct of sending faxes, is instructive. Case No. 14-cv-596-SMY-SCW, 2016 WL 3402621 *7 (S.D. Ill. June 21, 2016). In *Emery Wilson*, the defendant maintained "a customer contact database known as the 'central file' containing customer information." *Id.* at *1. Further, Defendant "contend[ed] that its employees were trained to obtain consent prior to faxing advertisements." *Id.* Additionally, Emery Wilson's "unwritten policy is to obtain verbal consent to send faxes. [Defendant] did not regularly maintain copies of materials sent to customers, notes regarding which faxes were sent, or documentation of the consent allegedly obtained." *Id.* at *2.

This is precisely the case here. Agentra claims that it had prior express consent to send text messages to Abboud and the other members of the Text Class pursuant to an internal policy, apparently unwritten, that requires agents to obtain consent prior to Agentra sending text messages. However, just as in *Emery Wilson*, Agentra failed to maintain records of its alleged consent; instead, it bases its consent defense on its internal policy. This lack of documentation—which as further explained below cannot be the basis for denial of class certification—means that when given the opportunity at trial to present its consent defense, Defendant's evidence will be identical for each and every class member: a description of its policy.

Agentra relies heavily on *Gene And Gene LLC v. BioPay LLC*, 541 F.3d at 328 (5th Cir. 2008) as supposed support for its contention that a class cannot be certified here. In *Gene*, the Fifth Circuit declined to certify a class because the class involved multiple sources of consent.

*See Gene And Gene LLC v. BioPay LLC*, 541 F.3d at 328 (5th Cir. 2008) ("the evidence shows that BioPay culled fax numbers from purchased databases but also periodically culled fax numbers from various other sources."). Here, of course, Agentra cannot show a variety of consent sources; instead, Agentra procured supposed permission in the exact same way: by instructing its agents to secure verbal consent before inputting consumer information into Agentra's 1Enrollment portal. The fact that Agentra has various different agents is a red-herring: what matters is that consent is supposedly obtained in a uniform manner—not what the specifics of the individual conversations were. Accordingly, Agentra's interpretation of and reliance on *Gene* is misplaced.

Moreover, if Agentra has failed to maintain appropriate records of consent prior to sending text messages, that is not a basis for escaping certification. As courts faced with such defenses have explained, "issues of individualized consent predominate when a defendant sets forth *specific evidence* showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 106-107 (N.D. Ill. 2013) (emphasis added). Conversely, "if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.* at 107. Furthermore, courts have repeatedly found that a Defendant's own failure to maintain adequate records cannot be the basis for avoiding class certification. *See also Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014) ("[D]efendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping. . . . Doing this . . . would create an incentive for a person to

violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct.").

As explained in *Emery Wilson*, "a helpful rule that can be extracted from TCPA cases regarding whether issues of individualized consent predominate over common questions of law or fact is that "individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented." 2016 WL 3402621 at *1. Further, regarding the lack of records, the court reasoned that:

> Although Sterling has provided some evidence that class members *may* have consented to receiving fax advertisements, this evidence is far from overwhelming. That evidence includes the affidavits of twelve clients (out of a class of potential thousands) attesting to providing Sterling prior express consent for fax transmittals and the testimony of two Sterling employees that consent was routinely elicited prior to sending fax transmittals. Sterling also contends that there is no way to determine consent due to lack of record keeping. However, Sterling may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements in order to defeat class certification in this matter.

*Id.* at *6.

Applied here, Agentra claims that it secures oral consent via its agents to send the text messages. The reality for Agentra is that it failed to maintain adequate records to support such contentions. Indeed, Agentra fails to produce any actual evidence that even a single potential class member gave prior express consent. As a result, Agentra is left with only its supposed internal policy as a defense—a defense which applies to each Class member with equal force and which can be adjudicated uniformly with a single stroke at an appropriate stage of the litigation.

As a final point on the Text Class, "the burden of proof is on defendant to establish that plaintiff expressly consented to be contacted." *Chavez v. Advantage Group*, 959 F.Supp.2d 1279, 1280 (D. Colo. 2013). Meanwhile, "plaintiff bears the burden of establishing that common issues

predominate." *Donaca v. Dish Netwrok, LLC.*, 303 F.R.D. 390, 401 (D. Colo. 2014). In other words, at the certification stage Plaintiff bears only the burden to demonstrate that an element of a claim or defense is capable of resolution on a class basis using common evidence; Abboud does not bear the ultimate burden of proof to show that consent was invalid. *See Messner v. Northshore University HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012) ("[P]laintiffs' 'burden at the class certification stage [was] not to prove the element of antitrust impact,' but only to 'demonstrate that the element of antitrust impact is *capable of proof at trial* through evidence that is common to the class rather than individual to its members.'" (citations omitted)).

Defendant apparently does not have any specific evidence that any individuals consented at all; instead, it has the same evidence for all class members—testimony regarding its supposed internal policy of having agents ask consumers orally for their consent. In other words, Agentra's only evidence of consent is the same for every class member—a recitation of its supposed policy and its concomitant belief that agents followed through with the procedure. This situation presents a clear case for resolution on a class basis because Defendant's course of conduct was identical for each member of the class and the Court can uniformly adjudicate whether the course of conduct was sufficient to constitute prior express consent. Agentra fails to point to even a single person from whom it obtained consent in a manner outside its supposed policy.

As such, the Court should find that Plaintiff has carried its burden of demonstrating that these common issues predominate in the present case.

### B.     The Agent Class satisfies all elements of Rule 23

Agentra attacks certification of the Agent Class on three primary grounds: (1) Agentra states that it cannot tell which calls were made to promote an Agentra policy, and that it only has

information for consumers who signed up and had their information entered into 1Enrollment by the agent (dkt. 39 at 4-5); (2) Agentra does not know which dialing equipment the agents at issue used (*id.* at 5); and (3) Agentra does not know which numbers belong to cellphones (*id.*).

As to Defendant's first main argument that it cannot tell which calls were made to promote an Agentra policy, and that it only has information for consumers who signed up, the Class can be determined through various means in addition to the information Agentra has available in 1Enrollment. First, the data Agentra has in its 1Enrollment portal for the agents at issue is a great starting point—these records clearly reflect consumers called by the agents at issue for the purpose of soliciting an Agentra product. Second, the Parties can acquire records from the agents themselves reflecting who was called for the purpose of promoting an Agentra policy. Finally, sworn statements from Class members can be used to show that the calls were received. As the Northern District of Illinois has explained, "Defendants' arguments, however, primarily assume a class or claim identification process that is based on affidavits alone, not the combination of documentary evidence and a sworn statement that plaintiffs propose." *Birchmeier*, 302 F.R.D. 240, 249–50 (N.D. Ill. 2014).[1] Hence, class members will be able to submit sworn testimony that they received calls that pitched an Agentra product. Those sworn statements, plus the records that Agentra has in its 1Enrollment portal already, as well as records that can be obtained from the agents at issue underscore the fact that membership is based on

---

[1] A class is not rendered unascertainable merely because an analysis of data is necessary to determine class membership. *See Dunnigan v. Metro. Life Ins. Co.,* 214 F.R.D. 125, 136 (S.D.N.Y. 2003) ("[T]he class can be identified through an examination of the individual files of each of the participants. The fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement.").

objective requirements; and suggesting that Class members submit such documents doesn't undercut findings of ascertainability, predominance, or manageability/superiority.

The same is true of Agentra's contention that it cannot determine which calls were made using the same dialing equipment that was used to call Class members. The identity of the systems used by the agents at issue is an objective inquiry that can be obtained from the agents in question. It is also a common question for the Class as to whether such systems constitute an ATDS. With a single stroke, the Court can determine whether they do or not for the entire Class.

Finally, whether a number was assigned to a cellular service or a landline is an objective inquiry. This shouldn't be an issue; such issues are routinely handled in TCPA cases. *See Doherty v. Comenity Capital Bank & Comenity Bank*, No. 16CV1321-H-BGS, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) ("Plaintiffs' expert consultant is able to identify which calls were made to cellphones from the outbound dial list, a common issue as to the class, as well as the number of calls made to each cellphone."); *Ung v. Universal Acceptance Corp.*, No. CV 15-127 (RHK/FLN), 2016 WL 9307196, at *2 (D. Minn. July 6, 2016) (Plaintiff's expert "compared the phone numbers on UAC 01242 and UAC 01243 against the Interactive Marketing Solutions and the Neustar ported-to-wireless and ported-to-landline databases to opine which of the phone numbers on the spreadsheets belonged to cell phone numbers.". Hence, experts are able to analyze the available data to determine which numbers belong to cellphones, and class members will be able to submit both sworn testimony as well as documents[2] proving that their number was assigned to a cellphone.

Thus, the Court should certify the Agent Class as well.

---

[2] Phone bills, contracts and other documents show whether service was for a landline or cellphone.

### C. Superiority is satisfied as well

As explained above, none of Defendant's arguments undercut superiority—any issues with manageability can be addressed through the combination of Agentra's records, the records of its agents, and class member statements and documents.

Those issues aside, as one Court has explained:

> Additionally, the Court notes the statutory damages provided by the TCPA are "not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 571–72 (W.D. Wa. 2012) (citing cases); *see also Whitaker v. Bennett Law, PLLC*, No. 13-CV-3145, 2014 WL 5454398, at *7 (S.D. Cal. 2014) (finding that given the damages allowed under the TCPA, "requiring the putative class members to adjudicate their claims independently would be too economically burdensome and would deprive many of a chance to recover under the law"). In light of these considerations, the Court finds that a class action is superior to individual adjudication.

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *10 (N.D. Cal. May 5, 2017).

### III. CONCLUSION

Plaintiff's proposed Class definitions are sufficiently tailored to meet the requirements of Fed. R. Civ. P. 23, and common issues of fact and law predominate over any supposed individual issues. As such, the Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

Dated: April 6, 2020                                  Respectfully Submitted,

                                                      By: /s/ Patrick H. Peluso
                                                           One of Plaintiff's Attorneys

                                                      Steven L. Woodrow*
                                                      swoodrow@woodrowpeluso.com
                                                      Patrick H. Peluso*

ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Robert B. Kleinman
robert@commonsensecounsel.com
Breanne Cope
breanne@commonsensecounsel.com
Common Sense Counsel LLP
404 West 7th Street
Austin, Texas 78701
Telephone: (512) 299-5329
Facsimile: (512) 628-3390

Brooke Frances Cohen
brookefcohen@gmail.com
4334 University Blvd
Dallas, TX 75205
Telephone: (214) 384-0537

*Attorneys for Plaintiff and the Class*

*\* Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that, on the date indicated below, the foregoing document (and any attachments or accompanying documents) was served via the Court's electronic filing system to all counsel of record.

Date: April 6, 2020

/s/ Patrick H. Peluso

12