# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **MONICA ABBOUD,** individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | **Case No. 3:19-cv-120** |
| v. | § § | |
| **AGENTRA, LLC,** | § § | |
| *Defendant.* | § § | |

# BRIEF IN SUPPORT OF
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1
II. LEGAL STANDARD............................................................................................ 1
III. FACTUAL BACKGROUND................................................................................ 1
IV. ARGUMENT......................................................................................................... 3
    A. Abboud's claims are barred because of the *Abramson* settlement. ............................ 3
        1. Abboud is an Abramson Settlement Class Member who did not opt out. ................................................................................................... 3
        2. Abboud's claims here were released by the Abramson settlement and are barred by res judicata. .................................................... 4
    B. Agentra's CRM software is not an ATDS as a matter of law. ................................. 9
        1. TCPA liability here requires a random or sequential number generator. ...................................................................................... 9
        2. Agentra's CRM software is not a random or sequential number generator. ...................................................................................... 10
    C. Plaintiff provided prior express consent to receive text messages. ........................ 13
V. CONCLUSION................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*,
 20 F.3d 663, 665 (5th Cir. 1994) ................................................................................................5

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242, 247-48 (1986) .....................................................................................................1

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 327 (1986)...........................................................................................................1

*Davis v. Dallas Area Rapid Transit*,
 383 F.3d 309, 313 (5th Cir. 2004) .............................................................................................5

*Facebook, Inc. v. Duguid*,
 141 S. Ct. at 1163, 1167, 1169 (April 1, 2021)....................................................................9, 10

*Fernandez–Montes v. Allied Pilots Ass'n*,
 987 F.2d 278, 284 n.8 (5th Cir. 1993) .......................................................................................5

*Hunsinger, v. Alpha Cash Buyers, LLC*,
 No. 3:21-CV-1598-D, 2021 WL 5040228, at *3, *4 (N.D. Tex. Oct. 29, 2021)............... 10-12

*In re Nat. Football League Players' Concussion Injury Litig.*,
 307 F.R.D. 351, 423 (E.D. Pa. 2015).........................................................................(Footnote 2)

*In re Deepwater Horizon*,
 819 F.3d 190, 197–98 (5th Cir. 2016) ...............................................................(Footnote 3), 5

*In re Rules & Regulations Implementing the TCPA*,
 7 F.C.C. Rcd. 8752 at ¶ 31 (1992) ...........................................................................................13
 30 F.C.C. Rcd. 7961 at ¶ 49 (2015) .................................................................................. 13-14

*Liberto v. D.F. Stauffer Biscuit Co.*,
 441 F.3d 318, 326 (5th Cir. 2006) .............................................................................................9

*Matson v. NIBCO Inc.*,
 No. 5-19-CV-00717-RBF, 2021 WL 4895915, at *3 (W.D. Tex. Oct. 20,
 2021) ........................................................................................................................(Footnote 3)

*Matter of W. Texas Mktg. Corp.*,
 12 F.3d 497, 500 (5th Cir. 1994) ...............................................................................................9

*MAZ Encryption Techs., LLC v. Blackberry Ltd.*,
 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018) ............................................................(Footnote 1)

*McEwen v. Nat'l Rifle Ass'n of Am.*,
  2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) ...................................................................10

*Meza v. Gen. Battery Corp.*,
  908 F.2d 1262, 1265 (5th Cir. 1990) .......................................................................................4

*Morris v. Copart*,
  No. 4:15-cv-724-ALM, 2016 WL 6608874, at *8 (E.D. Tex. Nov. 9, 2016) .........................13

*Oreck Direct, LLC v. Dyson, Inc.*,
  560 F.3d 398 (5th Cir. 2009) ......................................................................................... *passim*

*Petro-Hunt, L.L.C. v. United States*,
  365 F.3d 385, 395 (5th Cir. 2004) ...........................................................................................4

*Samataro v. Keller Williams Realty, Inc.*,
  No. 1:18-CV-775-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) ........................10

**Rules**

FED. R. CIV. P. 1 ..............................................................................................................................1

FED. R. CIV. P. 56(a) .......................................................................................................................1

47 U.S.C. § 227(a)(1)................................................................................................................. 9-10

47 U.S.C. § 227(b)(1)(A)...............................................................................................................13

Defendant Agentra, LLC ("Defendant" or "Agentra") respectfully submits this Brief in support of its accompanying Motion for Summary Judgment.

## I.     INTRODUCTION

Agentra moves for summary judgment on the grounds that all of Plaintiff Monica Abboud's ("Plaintiff" or "Abboud") Telephone Consumer Protection Act ("TCPA") claims are barred by the settlement of the *Abramson v. Agentra, LLC* matter under the principles of res judicata.

In the alternative, Agentra also moves for partial summary judgment on two separate grounds: Agentra's CRM software is not an automatic telephone dialing system and Plaintiff provided prior express consent to receive the text messages at issue.

## II.     LEGAL STANDARD

A summary judgment motion is intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1).

Federal Rule of Civil Procedure 56(a) provides that the Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." However, not every factual dispute defeats summary judgment; the requirement is that "there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248.

## III.     FACTUAL BACKGROUND

Over eight months before Abboud filed her present lawsuit, Stewart Abramson filed a TCPA class action lawsuit styled *Abramson v. Agentra LLC et al.*, No. 2:18-cv-615-PLD in the

Western District of Pennsylvania against Agentra.[1] Ex. A (App. at 2-11). After extensive motion practice and fact discovery, Agentra and the *Abramson* plaintiffs reached a tentative class settlement (Ex. B, App. at 17-60) which the *Abramson* court granted preliminary approval of on September 4, 2020. Ex. C (App. at 62-69).

This preliminary approval order set forth the procedure for disseminating notice to the settlement class members and the procedure for such class members to opt-out, object to the settlement, and submit claims. *See id.*

Relevant here, the preliminary approval order instructed members of the settlement class in the *Abramson* matter (hereinafter "Settlement Class Members") that they "*may not both object and opt out*." *Id*. ¶ 11 (App. at 65) (emphasis added). The opt-out procedure mandated was as follows:

> To submit a Request for Exclusion [i.e., opt-out], Settlement Class Members must follow the directions in the Notice and send a compliant request to the Settlement Administrator at the address designated in the Class Notice by the Opt-Out Deadline. In the Request for Exclusion, the Settlement Class Member must state his or her full name, address, telephone number, the name and case number of the Action, and must state in writing that he or she wishes to be excluded from the Settlement Class in this Action. The Request for Exclusion must be signed by the Settlement Class Member or, in the case of a person in the Settlement Class who is deceased or incapacitated, the signature of the legally authorized representative of such person. No Request for Exclusion will be valid unless all of the information described above is included.

*Id*. ¶ 13 (App. at 65-66).

After an unopposed three-week extension, the deadline for Settlement Class Members to opt-out, object to the settlement, or submit a claim fell on December 24, 2020. *See id*. (App. at 70).

---

[1] True and correct copies of the following case records from the *Abramson* matter are attached as the following exhibits to the Appendix filed concurrently herewith: (A) the Complaint, (B) the Settlement Agreement, (C) Preliminary Approval Order and order extending deadlines, (D) Abboud's Objection to the Instant Settlement, (E) Memorandum Opinion accompanying (F) Order Approving Final Settlement, and (G) Final Judgment.
The Court may take judicial notice of these case records from the *Abramson* matter in deciding the present Motion. *See MAZ Encryption Techs., LLC v. Blackberry Ltd.*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018) ("case records … are just the type of records that the Court may take judicial notice of.").

On December 23, 2020, Abboud filed an objection to the *Abramson* preliminary settlement. *See* Ex. D (App. at 72). Her objection requested, as alternative relief, the *Abramson* court "grant Abboud leave to exclude herself and the members of the two classes she represents." *Id*. at 14 (App. at 85). Abboud's counsel then attended and argued the objection at the final approval hearing for the class action settlement on January 28, 2021.

The *Abramson* court issued an order approving final settlement on August 3, 2021, approving the parties' settlement over Abboud's objection, certifying the Settlement Class, and denying both her objection as well as her request for alternative relief. Ex. F (App. at 125-28).

### IV. ARGUMENT

**A.     Abboud's claims are barred because of the *Abramson* settlement.**

The *Abramson* case records establish (1) Abboud objected to the class settlement instead of opting out and (2) the class settlement in *Abramson* precludes Abboud's claims here.

**1.     Abboud is an *Abramson* Settlement Class Member who did not opt out.**

The claims administrator for the *Abramson* matter, KCC Class Action Services, LLC, never received an opt out from Abboud. *See* Ex. H (App. at 133-35). This is expected given Abboud was no mere absent class member but rather one who actively intervened and objected. Her actions are not just logically antithetical to opting out, but also operate to preclude her from now making the due process or late-filed opt out arguments typically raised by absent class members in these circumstances.

Specifically, the order approving final settlement (incorporating by reference the preliminary approval order) made clear Settlement Class Members could not *both* object *and* opt out. *Compare* Ex. C ¶ 11 (App. at 65) ("Settlement Class Members may not both object and opt out.") *with* Ex. F ¶ 7 (App. at 127) ("Monica Abboud … objected to the Settlement Agreement."). Consistent with this, the order approving final settlement denied Abboud's request for alternative

relief, which requested an opt-out for her and her classes in this matter. *See id.* (denying Abboud's objections to class settlement and proposed alternative relief).

To the extent Abboud contends that the *Abramson* court's requirement to select between objecting and opting out was improper, the present Motion is the inappropriate vehicle to do so because the *Abramson* court "retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement." Ex. F ¶ 16 (App. at 129). In any event, the *Abramson* court's requirement to select between objecting and opting out finds support from both Third Circuit[2] and Fifth Circuit[3] decisions.

### 2. Abboud's claims here were released by the *Abramson* settlement and are barred by res judicata.

"Federal law determines the res judicata effect of a prior federal court judgment." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990). Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.*

---

[2] *See, e.g., In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 423 (E.D. Pa. 2015) (citations omitted) ("The choice between opting out and objecting is not coercive. It is well established that 'class members may either object or opt out, but they cannot do both.' Moreover, the Third Circuit has implicitly rejected Objectors' position; it would be impossible to consider 'the reaction of the class to the settlement' for the purposes of Rule 23(e)(2) if Class Members were allowed to opt out up until the point of final approval.").

[3] *See, e.g., In re Deepwater Horizon*, 819 F.3d 190, 197–98 (5th Cir. 2016) ("the court and parties should not have to intuit an opt out from vague statements made in one of thousands of filings before the court. To hold otherwise would allow class members to make ambiguous statements and motions while waiting to see if the outcome of the class action is favorable. The 1966 amendments to Rule 23 sought to prevent exactly this type of gamesmanship."); *Matson v. NIBCO Inc.*, No. 5-19-CV-00717-RBF, 2021 WL 4895915, at *3 (W.D. Tex. Oct. 20, 2021) (citations omitted) ("Nevertheless, the Court advised Garcia at the September 9 hearing of its intent to deny his alternative request to opt-out at a later date, should the Settlement be approved. And, in the interest of justice, the Court permitted Garcia an opportunity to withdraw his objection and opt-out instead. Garcia declined to opt-out and instead chose to proceed with his objection. Accordingly, Garcia will be bound by this settlement.").

Because res judicata is often raised successfully in the present context, i.e., binding class members to an earlier class action judgment, the Fifth Circuit has observed that, "[a]s a general rule, a judgment in a class action will bind the members of the class." *In re Deepwater Horizon*, 819 F.3d 190, 198 (5th Cir. 2016). Nothing here supports deviating from this general rule.

The first res judicata element, identical parties, is easily met from the *Abramson* case records: Abboud was an intervenor plaintiff in *Abramson* that attended the final approval hearing to argue her objection to the class settlement. Likewise, Agentra was the defendant in both *Abramson* and the present matter.

The second and third elements are also easily met; there is no dispute that the Western District of Pennsylvania is a court of competent decision and that it issued a final judgment on the merits in the *Abramson* matter by way of the aptly-titled Final Judgment (Ex. G, App. at 131) concurrently issued with the Order Approving Final Settlement dismissing the case with prejudice. Ex. F ¶ 10 (App. at 127); *see Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993) (dismissal with prejudice is normally an adjudication on the merits for purposes of res judicata).

The final element, identity of cause of action, is also met here. The Fifth Circuit typically uses the "transactional test" to determine whether two actions involve the same claim or cause of action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004). Under the transactional test, "the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). "If the factual scenario of the two actions parallel, the same cause of action is involved in both." *Id*.

*Oreck Direct, LLC v. Dyson, Inc.* is instructive on this last res judicata element. 560 F.3d

398 (5th Cir. 2009). There, in an earlier lawsuit referred to as "*Oreck I*," Oreck brought claims under the Lanham Act and Louisiana Unfair Trade Practices Act ("LUTPA"), alleging "Dyson falsely advertised that its vacuum cleaners do not lose suction," without limitation to specific vacuum cleaner models. *Id*. at 400. *Oreck I* was settled with a "binding term sheet" that was replaced by a formal settlement agreement after dismissal. *Id*. An important distinction between *Oreck Direct* and this matter was that the final judgment in *Oreck I* declined to incorporate the binding term sheet by reference and *Oreck I*'s formal settlement agreement *did not exist when the final judgment issued*.

Oreck then filed another lawsuit, this time alleging "Dyson's 'no loss of suction' and 'most powerful lightweight' representations regarding its DC18 model were false and deceptive in violation of § 43(a) of the Lanham Act and LUTPA." *Id*. Dyson successfully moved for summary judgment on res judicata grounds in this second lawsuit, with the district court "finding that the claims in Oreck's present action were part of the same series of transactions at issue in *Oreck I* and therefore barred by res judicata." *Id*.

Oreck appealed, resulting in the *Oreck Direct* opinion, which held the second matter's purportedly new factual allegations directed against Dyson's "most powerful lightweight" representations and a specific Dyson's vacuum model, the DC18, were insufficient to escape the transactional test, because such allegations could have been included in the first suit:

> [W]e find no merit in Oreck's contention that the instant claims were not the same as those in *Oreck I* because Oreck now challenges Dyson's "no loss of suction" representations and its "most powerful lightweight" representations. Both advertisements were being used by Dyson during *Oreck I* to promote the DC18 to national retailers. Had Oreck properly included the DC18 in its first suit, Dyson's "most powerful lightweight" representations would have likewise been included.

*Id*. at 403.

The facts here compel the same result as *Oreck Direct*. Abboud may argue her claims differ

from those of *Abramson* because she alleges TCPA liability for text messages, but this is a distinction without a difference. The *Abramson* and Abboud complaints tell the exact same story of TCPA liability arising out of the same nucleus of operative facts: third-party insurance sales agencies selling insurance plans with the same marketing strategies, i.e., utilizing a lead generator vendor for outreach, connecting with the named plaintiffs over the phone, and completing the enrollment process via text messaging. *Compare* Ex. A (App. at 2) *with* Compl, [Dkt. 1].

Just like Dyson, Agentra engaged in the activity in question (sending electronic signature hyperlinks by text) during the entire relevant timeline, and so the text message allegations of Abboud could have been included in *Abramson*. Indeed, the *Abramson* plaintiffs produced text messages originating from the same phone number (214-238-9664) and with the same content (an electronic signature hyperlink) as the text messages at the basis of Abboud's claim (Ex. I, App. at 139-40):

 

TEXTS RECEIVED BY ABBOUD     TEXTS RECEIVED IN *ABRAMSON*

In addition, the final res judicata element can be found in the *Abramson* final judgment without consideration of the transaction test. In *Oreck Direct*, Oreck argued that "the district court

should have abandoned the transactional test entirely and determined the scope of res judicata by the parties' actual intentions as reflected in the Settlement Agreement." *Oreck Direct*, 560 F.3d at 402.[4] The Fifth Circuit disagreed, noting "the final judgment in *Oreck I* simply dismissed the case with prejudice without incorporating the Settlement Agreement, the terms of which were finalized after the consent judgment was entered, or any express reservations." *Id*.

In this case, in contrast to the facts of *Oreck I*, the *Abramson* final judgment not just incorporates by reference the Settlement Agreement (Ex. F ¶ 1, App. at 125) but also disposes of Abboud's claims within its four corners. *See id*. ¶ 11-12 (App. at 127-28). Specifically, the order approving final settlement ordered "each and every one of the Settlement Class Members unconditionally, fully, and finally release and forever discharge the Released Parties from the Released Claims"[5] and is also "barred from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims … directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties." *Id*. This broad release subsumes and disposes of Abboud's claims here.

In other words, the pertinent provisions of the Settlement Agreement for purposes of establishing res judicata are embodied in the *Abramson* final judgment, whether by the final judgment's release itself or its incorporation by reference of the Settlement Agreement, and the Fifth Circuit holds a "settlement agreement approved and *embodied in a judgment by a court* is entitled to full res judicata effect." *Matter of W. Texas Mktg. Corp.*, 12 F.3d 497, 500 (5th Cir.

---

[4] In a footnote, *Oreck Direct* found that res judicata would have applied even if the settlement agreement controlled. *Id*. at 404 n.8 ("We likewise agree with the district court's analysis in its order denying Oreck's request for reconsideration that even if the terms of the Settlement Agreement had dictated the scope of the res judicata analysis, Dyson would still prevail.") The same applies here, res judicata can be found regardless of whether the final judgment embodying the Settlement Agreement or transaction test controls.

[5] The "Released Parties" include Agentra and "Released Claims" consist of causes of action "arising from the use by any or all of the Released Parties or by any vendor retained by the Released Parties of any 'automatic telephone dialing system,' and/or 'artificial or prerecorded voice,'" including any claims arising under the TCPA. Ex. B at 7-8 (App. at 23-24). All of Abboud's claims (whether Text Class or Agent Class) rely on an ATDS. [*See* Dkt. 46 at 1-2.]

1994) (emphasis added); *see also Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 326 (5th Cir. 2006) ("[T]here are circumstances where a settlement agreement approved and embodied in a final judgment of the court is entitled to full res judicata effect. Res judicata applies where the parties to a settlement objectively manifest an intent to cement their agreement with claim preclusion.").

Moreover, the parties here could not have made their intention to cement their agreement with claim preclusion any more clearly because the Settlement Agreement states "all Released Rights shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion." Ex. B at 8 (App. at 24). In sum, both the transaction test and the *Abramson* final judgment compel the same conclusion—the same TCPA cause of action was involved in the present matter and *Abramson*, and summary judgment of res judicata should be granted.

**B.    Agentra's CRM software is not an ATDS as a matter of law.**

"The Telephone Consumer Protection Act of 1991 ("TCPA") proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an 'automatic telephone dialing system,'" or "ATDS" for short. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (April 1, 2021). In this case, Agentra sent text messages to customers who had completed the verbal application process in order to finalize the discussed transaction. The texts were sent by a third-party customer relationship management ("CRM") software subscribed to by Agentra. Because the CRM software does not meet the TCPA's definition of an "automatic telephone dialing system," Abboud's claim fails as a matter of law.

**1.    TCPA liability here requires a random or sequential number generator.**

The TCPA defines "automatic telephone dialing system" as equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." 47 U.S.C. § 227(a)(1).

Prior to *Facebook*, a circuit split existed as to whether the clause "using a random or

sequential number generator" modified both verbs that precede it ("store" and "produce") or merely the nearest ("produce"). *Facebook*, 141 S. Ct. at 1169.

In *Facebook*, the Supreme Court unequivocally held the "generator" clause modified both "store" and "produce," meaning that TCPA liability requires "in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id*. at 1170. Applying its interpretation of ATDS, the Supreme Court held Facebook did not use an ATDS when it "sent targeted, individualized texts to numbers linked to specific accounts." *Id*. at 1168.

Accordingly, *Facebook* means that the ATDS element requires that defendant "used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that [defendant's] dialing system has that capability." *Hunsinger, v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2021 WL 5040228, at *3 (N.D. Tex. Oct. 29, 2021) (quoting *McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021)).

Courts applying *Facebook* hold that the ATDS element excludes systems where telephone numbers were obtained non-randomly, such as from customer lists. *See Samataro v. Keller Williams Realty, Inc.*, No. 1:18-CV-775-RP, 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021) (dismissing "claim with prejudice because it is based on calls made to specific individuals in connection with their property listings, whose numbers were compiled into a preproduced list of phone numbers, as opposed to generated randomly by an autodialer.").

**2.  Agentra's CRM software is not a random or sequential number generator.**

Plaintiff's "Text Class" encompasses all persons in the United States who, from January 15, 2015 through the date notice is sent, "received one or more text messages on their cellular telephone, via Agentra's CRM system, for the same purpose as the text messages at issue were sent to Plaintiff, and for whom Agentra has no record of prior express consent." [Dkt. 46 at 1.]

The parties do not dispute that the below two text messages were sent to Plaintiff by Agentra's CRM software:

https://www.1enrollment.com/sig/?a=AB3A577A-EAE4-4553-A2C4-802975B7EC11

https://www.1enrollment.com/sig/?a=99B1A7A2-DD70-4B09-991C-39A73E52C711

Ex. I (App. at 139).

Summary judgment should be granted because no meaningful dispute exists that Agentra's CRM software does not store or produce telephone numbers to be called with a random or sequential number generator. Agentra's IT Manager testifies such functionality does not exist within this CRM software, known as "Admin123" (*see* Ex. J, Dunayer Decl., App. at 142), and Agentra's corporate representative likewise testified that Admin123 sends text messages in this simple manner:

> Q. Okay. How are the text messages sent? Does someone have to manually type in the texts or is it an automatic thing that goes out from the CRM as soon as someone's enrolled?
>
> A. Once -- once the agent completes the enrollment, it [the text message] automatically goes out.

Ex. K at 55:24-56:4 (App. at 151-52).

But even discounting Agentra's undisputed witness testimony, random or sequential number generation makes no sense given the purpose of the text messages at issue—delivering customers an electronic signature link to complete the application process for insurance products they agreed to purchase over the phone. Even taking Plaintiff's allegations as true, nothing about the number texted was random as it was expressly directed to the number provided by Plaintiff. *See Hunsinger*, 2021 WL 5040228, at *4 (N.D. Tex. Oct. 29, 2021) ("The direct and personal nature of the text messages weighs against a reasonable inference that [defendant] used an ATDS to send the messages.").

As mentioned previously, Agentra "is a Texas based insurance agency that provides benefit enrollment and premium collection." Ex. K at 59:16-20 (App. at 157). Agentra does not underwrite or sell its own insurance policies, nor does it have any solicitation contact with the general public. *Id*. at 46:22-47:12 (App. at 150-51). Agentra functions as the middleman between the insurance companies that underwrite insurance policies ("carriers") and the third party-independent contractors that market those policies to the general public (hereinafter, "sales agents").[6]

The telephone dialing equipment in question, the Admin123 software, assists sales agents with benefit enrollment, i.e., signing customers up to insurance policies. When a customer requests to the sales agent to enroll in an insurance product administered by Agentra, the sales agent enters the required customer information into Admin123 and presses the submit button. *Id.* at 56:5-13 (App. at 154).

This submission triggers two actions: ***first***, Admin123 automatically populates a contract template with the required customer information,[7] and ***second***, Admin123 sends a text message with the electronic signature link to the newly generated contract. *Id*. at 56:14-16, 57:9-14 (App. at 154-55).

Plaintiff, like all Text Class members, received a text message that follows the same formula: "https://www.1enrollment.com/sig/?a=" followed by a 36 character universally unique identifier ("UUID") keyed to that class member's respective contract. These two elements combined result in a unique electronic signature link that directs the recipient class member to a website for review and electronic signature of the contract purchased over the phone.[8]

---

[6] These independent contractors are referred to as "sales agents" in the industry, but this language is not intended to indicate or imply any agency relationship in the legal sense.
[7] *Id*. at 60:1-3 (App. at 158) (contract "information is automatically populated").
[8] The electronic signature links were still functional as of November 1, 2021 and one can see at Exhibit L that they were specifically directed to Plaintiff because they direct the viewer to contracts with Plaintiff's information (e.g., name, address, phone, email) automatically populated. (App. at 163, 187, and 211.)

It would be counterproductive, to say the least, if these text messages were sent to any phone number other than the one provided by the specific customer. In other words, if destination phone numbers were randomly or sequentially generated for electronic signature text messages, no customer could ever sign their respective contract and complete the enrollment process.

Accordingly, Agentra is entitled to summary judgment on Abboud's TCPA claim arising from the text messages sent by Agentra through its CRM software because such software is not an automatic telephone dialing system as a matter of law.

**C.     Plaintiff provided prior express consent to receive text messages.**

Under the provision of the TCPA relied on by Plaintiff, prior express consent precludes TCPA liability. 47 U.S.C. § 227(b)(1)(A) (prohibiting calls "other than a call … made with the prior express consent of the called party.")

The TCPA is silent as to what constitutes "prior express consent," but the Eastern District of Texas, relying on FCC guidance, held "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Morris v. Copart*, No. 4:15-cv-724-ALM, 2016 WL 6608874, at *8 (E.D. Tex. Nov. 9, 2016) (citing *In re Rules & Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752 at ¶ 31 (1992)).

The FCC has instructed there is no "specific method by which a caller must obtain such prior express consent." *In re Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 at ¶ 49 (2015). Rather, "the scope of consent must be determined upon the facts of each situation." *Id*. Given this open-ended nature of determining consent, the "TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary." *Id*.

In this case, the record demonstrates Plaintiff provided prior express consent via the intermediary sales agent, to receive the text messages from Agentra at issue. Agentra notifies all

sales agents they "must inform the consumers that these [electronic signature link] text messages are going to be sent." Ex. K at 56:17-20 (App. at 154). The sales agents are reminded of this even during the enrollment process itself, through the Admin123 software, as explained below:

> Q. Okay. Does Agentra do anything to ensure that agents actually are notifying consumers that the text messages will be sent?
> A. It's part of the enrollment process.
> Q. Walk me through that. What do you mean it's part of the enrollment process?
> A. Just as I said, they … in the system, advise the consumer they will receive a text message or an -- an e-mail.
> Q. I see. So as the agent is typing in the information, there's -- there's a reminder that pops up?
> A. Yes.
> Q. Okay. Okay. So this text message would have been sent through Agentra's CRM system?
> A. Yes.
> Q. Once the agent clicks submit, this would have gone out?
> A. Yes.

*Id.* at 56:21-57:14 (App. at 154).

Plaintiff may claim that she never received such a reminder from the sales agent she spoke with. But no matter how Plaintiff recollects her telephone call(s), the evidence demonstrates that Plaintiff voluntarily and knowingly provided her phone number to the sales agent for the purpose of completing enrollment. Plaintiff successfully received both text messages at issue on her mobile device. Ex. I (App. at 139).

As mentioned previously, Admin123 populates the contracts linked to in the text messages with the information the consumer provided to the sales agent. *See*, *supra*, n.7. In this case, Plaintiff's electronic signature pages contain her name, contact information (including phone number), payment method, and terms for the products she agreed to purchase. *See*, *supra*, n.8; *see also* Ex. L (App. at 163, 187, and 211). It follows that the only way Admin123 could possess and then automatically populate this information is if Plaintiff *voluntarily provided it to the sales agent she spoke with*.

In sum, the record establishes Plaintiff volunteered her phone number to Agentra for the purpose of benefit enrollment and received a text message for that exact purpose. Her actions constitute prior express consent, and summary judgment on this issue should be granted in favor of Agentra.

## V.  CONCLUSION

**WHEREFORE,** Defendant respectfully requests entry of an Order granting summary judgment in its favor based on any or all of the grounds stated above as well as an award of all other relief at law and equity to which it is entitled.

Dated: December 14, 2021                                    Respectfully submitted,

                                                            */s/ Andrew Lin*
                                                            ANDREW LIN
                                                            alin@pcrfirm.com
                                                            Texas Bar. No. 24092702
                                                            WILLIAM S. RICHMOND
                                                            brichmond@pcrfirm.com
                                                            Texas Bar. No. 24066800
                                                            **PLATT CHEEMA RICHMOND PLLC**
                                                            1201 N. Riverfront Blvd., Suite 150
                                                            Dallas, Texas 75307
                                                            Telephone: (214) 559-2700
                                                            Facsimile: (214) 559-4390

                                                            **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned counsel for Defendant Agentra, LLC does hereby certify that this pleading was served on counsel of record on December 14, 2021 by electronic filing.

                                                            */s/ Andrew Lin*
                                                            Andrew Lin