# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MONICA ABBOUD, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>AGENTRA, LLC, a Texas limited liability company,<br><br>    Defendant. | Case No. 3:19-cv-00120-X<br><br>**PLAINTIFF'S COMBINED BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.  INTRODUCTION ..........................................................................................................1

II. BACKGROUND ............................................................................................................2

III. ARGUMENT ..................................................................................................................4

*Standard of Review* ..................................................................................................5

    A.    Res Judicata Does Not Bar Plaintiff's Claims Because She Is Not A Member Of The Approved Settlement Class In *Abramson*. ................................................5

    B.    Notwithstanding Defendant's Misstatement Of The Holding In *Facebook*, Agentra Has Admitted That Its CRM System Generates Random Numbers And Sends Texts Automatically. ..............................................................................9

    C.    Consent Is An Affirmative Defense, And Agentra's Testimony As To What Generally Happens Is Insufficient To Meet Its Burden To Prove That Abboud Consented. ...........................................................................................12

IV. CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

*Abramson v. Agentra, LLC*, No. CV 18-615,

    2021 WL 3370057 (W.D. Pa. Aug. 3, 2021) ............................................................ *passim*

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*,

    754 F.3d 272, 276 (5th Cir. 2014) ....................................................................................... 5

*Carl v. First Nat'l Bank of Omaha*, No. 2:19-cv-00504-GZS,

    2021 WL 2444162 (D. Me. June 15, 2021) ...................................................................... 12

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ....................................................................... 9

*Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973) ....................................................................... 6

*In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016) .............................................................. 6

*Jones v. United States*, 936 F.3d 318 (5th Cir. 2019) .................................................................. 5

*Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2012) ............................................... 13

*MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138-PHX-SMB,

    2021 WL 5203107 (D. Ariz. Nov. 9, 2021) ..................................................................... 10

*McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-CV-00153-LEW,

    2021 WL 5999274 (D. Me. Dec. 20, 2021) ..................................................................... 10

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) ................................................. 8

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004) .............................................. 6

*Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012) ........................................................................... 5

**STATUTES, RULES, REGULATIONS, AND SECONDARY SOURCES**

FED. R. CIV. P. 56 .......................................................................................................................... 5

*In re Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 (2015) ................... 13

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* ........................ 1, 10, 13

**I.       INTRODUCTION**

In its Motion for Summary Judgment, Defendant Agentra, LLC ("Defendant" or "Agentra") contends that Plaintiff Monica Abboud's ("Plaintiff" or "Abboud") claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") are barred as a matter of res judicata following the settlement of another TCPA class action against Agentra, *Abramson v. Agentra, LLC*, No. CV 18-615, 2021 WL 3370057 (W.D. Pa. Aug. 3, 2021). In the alternative, Agentra asks the Court for partial summary judgement on two separate grounds: (1) that its CRM software supposedly does not qualify as an automatic telephone dialing system ("ATDS") as that term is defined in the TCPA; and (2) that Plaintiff supposedly consented to the text messages at issue.

Each of Defendant's arguments is flawed and insufficient to support summary judgment, and in fact summary judgment is warranted in Abboud's favor. First, res judicata cannot be applied to bar Plaintiff from bringing her TCPA claims because she is not a member of the settlement class approved in the *Abramson* case. The *Abramson* case dealt only with calls, not text messages, and the settlement class was restricted to persons who purchased an Agentra policy—Abboud made no such purchase, and thus she is not a class member bound by the *Abramson* settlement. Second, Defendant's ATDS argument is based on a misreading of the Supreme Court's recent *Facebook* decision, and Agentra's testimony reveals the capacity to use, if not the actual use of, random number generation in addition to automated dialing. Third, consent is an affirmative defense, and Defendant has not provided any evidence to support its contention that Plaintiff consented. Thus, in light of Abboud's claim that she did not consent and a lack of evidence to the contrary, Agentra is not entitled to summary judgment on this basis.

1

Accordingly, and as explained below, Abboud is entitled to summary judgment and Defendant's motion for summary judgment should be denied.

## II.   BACKGROUND

This lawsuit challenges phone calls and text messages that Agentra (or a third-party acting on its behalf and for its benefit) placed to Abboud and other cellphone users in violation of the TCPA. Abboud alleged receipt of both texts and calls from Agentra, and the Court certified two classes of similarly-situated individuals: (1) consumers who received one or more text messages from Agentra in the same manner as Abboud; and (2) consumers who were called on their cellphones by Agentra to promote insurance products using the same equipment that was used to call Abboud. (Dkt. 42 at 2.)

Plaintiff was called by two separate agents of Agentra: Health Care Enrollment Center (an apparent d/b/a of Stellar Communications, Inc. and Jake Gabbard), and Life and Health Insurance Services, a company run by Jason Espinoza. During the pendency of this matter, Agentra was defending another class action for TCPA violations, *Abramson v. Agentra*, No. 2:18-cv-615-PLD (W.D. Pa. 2018) [hereafter "*Abramson*"]. Abboud became aware that the *Abramson* case sought to settle a class involving calls from both agents involved here (despite the fact that Abramson did not receive calls from those agents), and she objected to the settlement on December 23, 2020. (*See* Dkt. 62-4.) After a fairness hearing, the Court in *Abramson* ultimately granted final approval to the settlement, but only after clarifying that the settlement class was "limited to only those individuals who purchased an Agentra policy" and revising the settlement class description accordingly. *Abramson v. Agentra, LLC*, No. CV 18-615, 2021 WL 3370057, at *5 (W.D. Pa. Aug. 3, 2021).

2

Agentra's 30(b)(6) designee admitted that the text messages Plaintiff received were sent "automatically" through its internal CRM system. Specifically, Agentra's designee testified:

> A. This is a text message that would have come from the CRM after an independent agent enrolls a consumer into our CRM. The CRM sends a text message to the individual with an agreement - - enrollment agreement for them to, if they agree, sign - - digitally sign.
>
> Q. When you say "the CRM," we're referring again to that online software that houses information about enrollees and agents?
>
> A. Correct.
>
> Q. So once an agent loads information into the CRM about a person who is in the process of enrolling - -
>
> A. Yes.
>
> Q. - - the system sends out text messages like this?
>
> A. Yes. The agent, as part of the enrollment process, advises the consumer that they will receive a text message or email from Agentra with an enrollment confirmation to - - to complete the enrollment to sign the agree - - digitally sign the agreement.
>
> Q. Understood. And that is sent by Agentra's CRM software?
>
> A. Correct.
>
> Q. Okay. How are the text messages sent? Does someone have to manually type in the texts or is it an automatic thing that goes out from the CRM as soon as someone's enrolled?
>
> A. Once - - once the agent completes the enrollment, it automatically goes out.

(Ex. A at 55:1-25; 56:1-4.) Agentra further testified that a generic number assigned to Abboud in its CRM system was "auto generated" when her information was uploaded to the system. (*Id.* 66:13–67:3.) Thus, a random or sequential number generator was used to store Abboud's phone number in Agentra's system.

3

In its discovery responses, Agentra stated that it "does not make any outbound calls or texts to cellular telephones where the Person provided prior express consent in the same manner that Defendant claims any consent was obtained to make calls to [Abboud]." (*See* Responses to Interrogatories, attached hereto as Exhibit B, at 3.) Agentra clarified in supplemental responses that "[t]he total number of persons is 1." This, of course, conflicts with Agentra's 30(b)(6) testimony as to how Defendant supposedly obtains consent for consumers that it contacts: "[t]he agent, as part of the enrollment process, advises the consumer that they will receive a text message or e-mail from Agentra with an enrollment confirmation to . . . digitally sign the agreement." (Ex. A at 55:16–20.) To date, and for the duration of discovery, Agentra has failed to provide any specific record of consent for Abboud or any class members. Rather, and as is evident in its Motion for Summary Judgment, its consent argument relies on the above testimony as to what it claims the enrollment process typically looks like. (*See* Dkt. 61 at 13–14).

As explained below, Agentra's arguments for summary judgment are unsupported. The *Abramson* settlement class did not contain Abboud, and Agentra has not produced any evidence to support its claims that its CRM system does not qualify as an ATDS or that Plaintiff supposedly gave prior express consent to be contacted. Thus, summary judgment should be granted in Abboud's favor. At the very least, genuine issues of material fact remain unresolved and, accordingly, summary judgment in Agentra's favor is not appropriate.

### III.   ARGUMENT

Defendant's motion for summary judgment fails on each of the grounds set forth. First, Agentra's argument for the application of res judicata to bar Plaintiff's TCPA claims is groundless because Abboud is not a member of the *Abramson* settlement class—the Court in *Abramson* clarified that the settlement class only included persons who purchased Agentra

4

products, and Abboud has never done so. Further, her text message claim does not overlap with the *Abramson* claims at all. Second, Defendant's ATDS argument is undercut by Agentra's own testimony—revealing capacity for, if not actual, random number generation—and it could only be supported by misreading the Supreme Court's *Facebook* holding. Finally, Defendant has failed to provide evidence to support its contention that Plaintiff consented, which is an affirmative defense; Agentra is not entitled to summary judgment based merely on testimony as to what *typically* happens, especially in response to Abboud's claim that she did not consent. Genuine issues of material fact remain to be resolved, and Defendant's request for summary judgment should be denied.

*Standard of Review*

Rule 56(a) of the Federal Rules of Civil Procedure provides for summary judgment upon motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exits "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014). The Court must consider evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-movant. *Id.* (citing *Thorson v. Epps,* 701 F.3d 444, 445 (5th Cir. 2012)). Thus, the moving party "always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (alterations in original).

    **A.    Res Judicata Does Not Bar Plaintiff's Claims Because She Is Not A Member Of The Approved Settlement Class In *Abramson*.**

Defendant's first basis for summary judgment is that Plaintiff's claims are supposedly barred by the settlement approved in another TCPA class action levied against Agentra—

5

*Abramson v. Agentra, LLC*, No. 2:18-cv-615-PLD (W.D. Pa. 2018). While Plaintiff did object to the settlement due to its coverage of the agents responsible for the calls that she received, her text message claims have no overlap with the *Abramson* case whatsoever, and the court in *Abramson* clarified prior to granting final approval that the settlement class included only persons who had made purchases of Agentra plans or products. Because Abboud never made such a purchase, she is not a member of the *Abramson* class and thus is not bound by res judicata.

As Defendant points out, res judicata is a principle that bars the litigation of claims "that either have been litigated or should have been raised in an earlier suit." (Dkt. 61 at 4); *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). The traditional elements for res judicata require that: (1) the parties are identical or in privity; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior action ended with a final judgment on the merits; and (4) the same claim was involved in both actions. *Id.* In the context of class settlements or proceedings, the general rule is that "a judgment in a class action will bind the absent members of the class." *In re Deepwater Horizon*, 819 F.3d 190, 198 (5th Cir. 2016); *Gonzales v. Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973).

Here, res judicata cannot be applied for failure to satisfy two of the four elements. Plaintiff does not dispute that the settlement approved in *Abramson* constitutes a final judgment, or that said judgment was rendered by a court of competent jurisdiction. However, and most critically, Abboud is not a member of the settlement class that was ultimately approved and bound by the judgment in *Abramson*. Agentra breezes over the first element of res judicata, insisting that it is "easily met" based on the fact that Abboud intervened in the *Abramson* case to object to the settlement. (Dkt. 61 at 5.) But her objection was based on a reading of the

6

*Abramson* settlement class language prior to final approval, which—when later clarified by the court—actually excluded her. When the Western District of Pennsylvania granted preliminary approval to the settlement class on September 4, 2020, it provisionally certified the following class:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) **regarding the sale of a product offered by Agentra** at any time between May 8, 2014 to February 1, 2020 that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

*Abramson*, 2021 WL 3370057, at *3 (emphasis added). Because Abboud was called by companies run by Jake Gabbard and Jason Espinoza, in an attempt to sell her Agentra's products and services, she appeared to fit within the provisionally-certified class and filed a timely objection to voice her concerns about the fairness of the settlement. But Plaintiff's interpretation of the phrase "regarding the sale of a product offered by Agentra" would prove to be incorrect when the Western District of Pennsylvania issued its order of final approval.

Following Abboud's objection and a fairness hearing, the *Abramson* court granted final approval to settlement, but not without clarifying the settlement class definition: "During the hearing, Plaintiffs [Abramson and Shelton], and Agentra agreed that the class description should be clarified to make it clear that, as stated in the class notice, the settlement class is **limited to only those individuals who purchased an Agentra policy** and to whom notice was sent." *Id.* at *5 (emphasis added). Thus, the Court revised the description of the final certified settlement class to the following:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) who were

7

>  <u>sold an Agentra product</u> ~~regarding the sale of a product offered by Agentra~~ at any time between May 8, 2014 to February 1, 2020, that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

*Id.* at *5–6 (alterations and emphasis in original). The *Abramson* court emphasized that this was not a change to the class itself—the class was previously limited to those who made a purchase, but the revised definition made that limitation clearer. Because Abboud did not purchase an Agentra policy or product, [1] she is not a member and is, in fact—following pointed clarification from the Western District of Pennsylvania—excluded from the *Abramson* settlement class. Thus, the general rule that absent class members are bound by the judgment cannot be applied to Abboud, and res judicata is unsupported.

Additionally, though res judicata fails in the absence of the first element, the fourth element of the same claim is also lacking. Abboud has alleged claims that are not the same, and were not raised in the Abramson case. One of Plaintiff's claims, and in turn one of her certified classes, is based on the receipt of unwanted text messages from Agentra itself, not third-party telemarketing agents. (Dkt. 42 at 2.) While her claim related to calls may have been similar to that raised in *Abramson*, albeit from different agents, there are no allegations related to text messages at all in Abramson's complaint. (*See* Dkt. 62-1.) This is not, as Agentra asks the Court to believe, similar to Oreck filing a second false advertisement case against Dyson with claims that "could have been included in [its] first suit." (Dkt. 61 at 6–7) (citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009)). Abboud was not a plaintiff in the *Abramson* case, named or otherwise—she was in no position to raise text message claims in that case because

---

[1] During deposition, Agentra's 30(b)(6) representative admitted that Abboud "did not sign the agreement" and "[h]er credit card was charged and it should not have [been]. That was an error." (Ex. A at 71:6–17.) Thus, Agentra admits that Abboud never purchased a policy from Agentra.

8

she was not a party to that case, and there are no allegations from Abramson related to unlawful text messaging from Agentra's system.

Though res judicata generally applies to preclude unnamed class members from raising the same claims, Abboud is not a member of the settlement class bound by the judgment in *Abramson*. As a result, Defendant's request fails for lack of identical parties, which is a critical element of res judicata. Agentra's motion for summary judgment should be denied.

### B.  Notwithstanding Defendant's Misstatement Of The Holding In *Facebook*, Agentra Has Admitted That Its CRM System Generates Random Or Sequential Numbers And Sends Texts Automatically.

Agentra next argues that its CRM software used to send text messages does not qualify as an ATDS "as a matter of law." (Dkt. 61 at 9–13.) Defendant's position is flawed for at least two reasons. First, the foundation of Agentra's claim is based upon a limited reading of the Supreme Court's *Facebook* decision. Defendant relies on one line of the decision that would write the word "capacity" out of the ATDS definition, and that is not what the Supreme Court did. Second, regardless of the misrepresentation of *Facebook*, there is no evidentiary support for finding "as a matter of law" that Agentra's CRM system is not an ATDS; in fact, Agentra's own admissions and testimony reveal the necessary capacity, if not the actual use, of random number generation. Defendant's argument for summary judgment on the ATDS issue is meritless, and it should be rejected.

In *Facebook*, The Supreme Court held as follows: "We hold that a necessary feature of an autodialer under § 227(a)(1)(A) is the ***capacity*** to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) (emphasis added). This holding aligns with the TCPA's plain language, which defines an ATDS as "equipment which has the capacity" to "store or produce telephone

numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1), *et seq.* By citing one line of the opinion which did not mention capacity, Agentra asks the Court to join a number of others that have been lured into ignoring the "capacity" requirement completely and to rewrite the TCPA.

As one court recently held, allegations that a dialer that can "import lists of leads with associated phone numbers," "generate sequential numbers and store these sequential numbers in a database, to indicate the automatic dialing order for leads," and "automatically call through a list of leads in sequential order" are sufficient to state a cause of action under the TCPA even after *Facebook*. *MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138-PHX-SMB, 2021 WL 5203107, at *2 (D. Ariz. Nov. 9, 2021) (internal quotations omitted). Indeed, to hold otherwise would effectively eliminate ATDS claims under the TCPA. Another Court recently reached a similar conclusion:

> *Facebook* made clear that the TCPA defines an ATDS in disjunctive form: a device must *either* store telephone numbers using a random or sequential number generator *or* produce numbers using a random or sequential number generator. *Facebook*, 141 S. Ct. at 1164. Thus a device that calls phones numbers from a "preproduced list" may still be an ATDS, so long as it "use[s] a random [or sequential] number generator to determine the order in which to pick" the numbers from the list **or otherwise stores the list of numbers using a random or sequential number generator**. *Id.* at 1172 n.7. Plaintiff's allegations, if true, describe just such a device: InfoCision maintains one or more lists of phone numbers, which are automatically plucked from the list using an algorithm and robotically dialed in the order in which they are picked.

*McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-CV-00153-LEW, 2021 WL 5999274, at *4 (D. Me. Dec. 20, 2021) (emphasis added).

The *MacDonald* and *McEwen* Courts got it right: an autodialer must have the capacity to use a random or sequential number generator, but it does not need to be used to produce phone numbers. Holding otherwise reads "store" out of the statute.

In any event, Agentra's testimony undercuts its own position—in addition to testifying that the text messages are "automatically" sent by its CRM system (*see* Ex. A at 55:11–56:4), Agentra's 30(b)(6) representative explained that a random or sequential number is created by the system and assigned to individuals in the program:

> Q.  So the - - this first page that you - - you were describing is - - is a printout of Abboud's page in the CRM portal?
>
> A. Yes.
>
> Q. Okay. Just had a couple of questions about it. Under the Set Up portion in that top box - -
>
> A. Uh-huh, yes.
>
> Q. - - there's a user name of 674204720 and then there's a password.
>
> A. Yes.
>
> Q. Did Abboud choose that user name or password or is it auto generated?
>
> A. It's auto generated.
>
> Q. And it's - - that's created when the agent uploads information into the CRM?
>
> A. When it - - once it's submitted, yes.

(Ex. A at 66:13–67:3.) In other words, Agentra's CRM system automatically generates some number—in Abboud's case, 674204720—and assigns it to individuals for storage in a database of consumer accounts. This testimony reveals not only the capacity for random or sequential number generation but actual generation for the purpose of storing phone numbers and account information.

Despite its own admission, Agentra claims that random or sequential number generation "makes no sense" for its purposes of obtaining signatures from clients. (Dkt. 61 at 11.) But what it has admitted to doing is the kind of number generation that fits within the ATDS definition for the word "store." The ATDS analysis concerns capacity to either "store or produce" numbers

using random or sequential number generation—the Supreme Court addressed how a dialing system that places calls from a preproduced list could qualify as an ATDS. That is, in footnote 7, the Supreme Court clarified that, for example, "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." 141 S. Ct. 1163, 1172 n.7 (2021) (citations omitted); *see also Carl v. First Nat'l Bank of Omaha*, No. 2:19-cv-00504-GZS, 2021 WL 2444162, at *9, n. 10 (D. Me. June 15, 2021). Thus, the fact that Defendant directed texts to specific individuals from a list does not—as Defendant would have the Court believe—mean that Agentra's CRM system is "as a matter of law" excused from liability. (*See* Dkt. 61 at 9.)

Agentra has not provided any evidence to suggest that its system does not randomly or sequentially generate numbers, or that it does not have the capacity to do so. Instead, it has admitted on the record that a number was "auto generated" and assigned to Plaintiff's phone number and account information in the CRM system. Defendant has not demonstrated "as a matter of law" that its dialer does not have ATDS capabilities, nor has it met its burden to demonstrate that there is no genuine issue of material fact. On the contrary, Abboud is entitled to summary judgment on the basis that an ATDS was used. At the very least, the question of ATDS capability, specifically in light of the "auto generated" number that Agentra has already admitted to, is one that remains triable and a reasonable jury could conclude in Plaintiff's favor on the ATDS issue. Accordingly, Agentra's request for summary judgment on the ATDS issue is unwarranted, and the Court should deny its motion.

  **C.** **Consent Is An Affirmative Defense, And Agentra's Testimony As To What Generally Happens Is Insufficient To Meet Its Burden To Prove That Abboud Consented.**

Defendant's final basis for seeking summary judgment is with regard to its consent defense. (Dkt. 61 at 13–15.) Agentra claims that it is entitled to judgment as a matter of law on its affirmative defense that Abboud supposedly consented to calls or text messages. But "the record" Defendant cites in support is inadequate to demonstrate consent, let alone to support summary judgment on the issue. Agentra's deduction of consent, based solely on testimony as to how consent is usually obtained, is insufficient to meet its burden of proof, and Defendant's motion for summary judgment should be denied.

Under the TCPA, calling that would otherwise be unlawful is permissible if done with "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). Consent is an affirmative defense to a TCPA claim—the defendant seeking to establish said defense bears the burden of proof. *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 130, n.7 (N.D. Tex. 2020); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 730 (S.D. Tex. 2012). Though the FCC does not specify a method by which "prior express consent" must be obtained, as opposed to prior express written consent for marketing calls, but that does not relieve defendants of the burden to prove that consent was actually obtained. *See In re Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 at ¶ 49 (2015).

To hear Agentra tell it, "the evidence" supposedly demonstrates "that Plaintiff voluntarily and knowingly provided her phone number" to a sales agent. (Dkt. 61 at 14.) But absent from Defendant's argument is reference to any actual evidence of consent. Instead, Agentra's consent argument is based on: (1) testimony as to what Agentra's enrollment process usually looks like, and (2) the fact that Agentra possessed Abboud's information and sent her two text messages. (*Id.* at 13–14.) Defendant has not produced any details, records, or even a declaration specific to how Abboud supposedly consented. In the absence of any records,

13

Agentra's argument is that "[i]t follows" that the only way Abboud's information could be in the system is if she "voluntarily provided it to the sales agent she spoke with." (*Id.* at 14.)

The reasoning here is critically flawed because it presumes, without any evidence at all, that Defendant or its sales agents could only obtain information voluntarily. Absent of making any evidentiary showing whatsoever as to how Plaintiff's information was, in fact, obtained, Agentra's request to just assume that it was obtained voluntarily is far from adequate to suggest consent as a matter of law, and it should not be entertained. Likewise, Agentra's supposed sequence of events makes no effort to account for the *prior* express consent needed to call Abboud in the first place. That is, Defendant asks the Court to ignore the need for express consent before the calls that were made to Plaintiff, and to simply assume that Agentra had consent to send texts based on the fact that it had Abboud's information following the calls. This is a far cry from an adequate showing of consent, and it falls woefully short of satisfying Defendant's burden to prove that it is entitled to judgment as a matter of law on its affirmative defense.

Further, while the only basis that Agentra provides as support for its consent defense is mere possession of Abboud's information and testimony as to the typical enrollment process (which is not enough to prove consent), Defendant stated in discovery that it doesn't make any calls or texts "where the Person provided prior express consent in the same manner that Defendant claims any consent was obtained to make calls to [Abboud]," later explaining that the total number of people texted where consent was claimed in the same manner as for Abboud is one. (Ex. B at 3.) Agentra's entire consent theory in the motion for summary judgment is premised on what it claims usually happens in the enrollment process, but it asserted that no other person was contacted or consented in the same manner. It is unclear whether Defendant is

14

suggesting that its typical enrollment process is in fact atypical and results in dissimilar and unpredictable consent for each person, or that Agentra is unable to even circumstantially suggest consent for any of the unnamed class members. At the very least, Agentra's inconsistent representations defeat any contention that Defendant is entitled to judgment as a matter of law on the issue of consent.

Consent is an affirmative defense, and Agentra has failed to meet its burden to prove that Abboud or any other class member provided prior express consent. Defendant is not entitled to judgment as a matter of law by simply asking the Court to assume its theory that Agentra could only possess Plaintiff's information if consent was given. The Court must weigh the evidence (or lack thereof) in favor of Plaintiff as the non-movant, and Defendant has inadequate evidence of consent to suggest that there is no genuine issue of material fact. Thus, the Court should deny the motion for summary judgment.

## IV.     CONCLUSION

Summary judgment should be granted in Plaintiff's favor and Agentra's motion for summary judgment should be denied. Defendant's argument for res judicata is groundless. Text message claims weren't at issue in *Abramson* and Abboud did not buy any Agentra products and is therefore not a member of the *Abramson* settlement class in any event. Defendant's remaining arguments—for judgment on the ATDS and consent issues—are unsupported and instead undercut by Agentra's testimony and lack of evidence. Agentra testimony reveals the capacity for, if not use of, random number generation, and Defendant has failed to provide any evidence to prove its affirmative defense of consent. Accordingly, the Court should grant Plaintiff's cross-motion for summary judgment, deny Agentra's motion, and grant any further relief as it may deem necessary.

DATED:  January 14, 2022					Respectfully submitted,
							By:  /s/ Patrick H. Peluso

							Robert B. Kleinman
							robert@commonsensecounsel.com
							Breanne Cope
							breanne@commonsensecounsel.com
							Common Sense Counsel LLP
							404 West 7th Street
							Austin, Texas 78701
							Telephone: (512) 299-5329
							Facsimile: (512) 628-3390

							Brooke Frances Cohen
							brookefcohen@gmail.com
							4334 University Blvd
							Dallas, TX 75205
							Telephone: (214) 384-0537

							Steven L. Woodrow*
							swoodrow@woodrowpeluso.com
							Patrick H. Peluso*
							ppeluso@woodrowpeluso.com
							Taylor T. Smith*
							tsmith@woodrowpeluso.com
							Woodrow & Peluso, LLC
							3900 E. Mexico Avenue, Suite 300
							Denver, CO 80210
							Phone: (720) 213-0676

							*Attorneys for Plaintiffs*
							**Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on January 14, 2022.

                                               /s/ Patrick H. Peluso
                                              Patrick H. Peluso