UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MONICA ABBOUD, *individually and on behalf of all others similarly situated,*<br><br>　　　　*Plaintiff,*<br><br>v.<br><br>AGENTRA, LLC,<br><br>　　　　*Defendant.* | §<br>§<br>§<br>§<br>§<br>§　Civil Action No. 3:19-CV-00120-X<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Monica Abboud, asserts claims under the Telephone Consumer Protection Act (TCPA) against Agentra, LLC, a Texas-based insurance agency. Both parties have moved for summary judgment. [Doc. Nos. 60 (Agentra) & 66 (Abboud).] For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Agentra's motion for summary judgment and **DENIES** Abboud's motion for summary judgment.

## I.   Background

Abboud challenges phone calls and text messages that Agentra (or a third-party acting on its behalf and for its benefit) placed to Abboud and other cellphone users allegedly in violation of the TCPA. Abboud alleged receipt of both texts and calls from Agentra, and the Court previously certified two classes of similarly situated individuals: (1) consumers who received one or more text messages from Agentra in the same manner as Abboud; and (2) consumers who were called on their cellphones

1

by Agentra to promote insurance products using the same equipment that was used to call Abboud. [Doc. No. 42 at 2.] Both parties now move for summary judgment.

## II. Legal Standard

Courts must grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A material fact is one "that might affect the outcome of the suit under the governing law."[2] And a "dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[4] "Summary judgment is not foreclosed by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[5]

## III. Analysis

### A. Agentra's Motion for Summary Judgment

Agentra raises three main arguments in support of its motion for summary judgment. The first is that all of Abboud's claims in this suit are barred because of a settlement in another class-action TCPA case. If Agentra wins this argument, it

---

[1] FED. R. CIV. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248).

[4] *Lexon Ins. Co. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021) (cleaned up).

[5] *Id.* at 322 (cleaned up).

would dispose of all of Abboud's claims—those based on calls and those based on text messages. Agentra's second argument is that Abboud consented to receiving the text messages, and thus that the Court should dismiss Abboud's text-message claims. Agentra's third argument is also about Abboud's text-message claims; Agentra argues that the software that it uses to send text messages does not qualify as an "automatic telephone dialing system" under the TCPA.

As explained below, the Court rejects Agentra's first argument, accepts the second, and need not address the third.

### i.   Principles of res judicata do not bar any of Abboud's claims.

Before Abboud filed this lawsuit, a man named Stewart Abramson filed a separate TCPA class action lawsuit against Agentra, styled *Abramson v. Agentra LLC et al.*, No. 2:18-CV-615-PLD, in the Western District of Pennsylvania. After motion practice and fact discovery, the *Abramson* court preliminarily approved of a class settlement between the *Abramson* plaintiffs and Agentra. The Court's preliminarily certified a settlement class of all persons contacted by certain of Agentra's purported agents "regarding the sale of a product offered by Agentra."[6]

Abboud represents that, because she was called by some of the agents listed in the preliminary class description and because those agents attempted to sell her

---

[6] *Abramson v. Agentra, LLC*, No. CV 18-615, 2021 WL 3370057, at *3 (W.D. Pa. Aug. 3, 2021).

3

Agentra products and services, Abboud "appeared to fit within the . . . class and filed a timely objection to voice her concerns about the fairness of the settlement."[7]

At the *Abramson* court's hearing on the *Abramson* plaintiffs' motion for final approval of a class action settlement, the court addressed Abboud's fairness arguments. Importantly, the court also had the following exchange with Abboud's counsel:

> THE COURT: And I'm assuming Ms. Abboud purchased a policy [from Agentra].
>
> ABBOUD'S COUNSEL: Yeah. There was some – she did do what [plaintiffs' counsel] said that his clients did, play along to try to figure out what was happening. There was some discussion at the 30(b)(6) deposition of Agentra that she essentially had been signed up by accident. Her credit card was charged, but it wasn't supposed to be charged. Either way, she received a notice. So she was signed up. She received a notice. She apparently appears on the settlement class list here.[8]

Also during the hearing, the court

> addressed whether clarification of the provisionally certified settlement class was necessary to resolve what might be construed as an ambiguity. . . . The provisionally certified class encompassed individuals who were "contacted regarding the *sale of a product* offered by Agentra." Both Plaintiffs and Agentra confirmed that this includes only those who actually purchased a policy. The class notice that was distributed also accurately reflects that the settlement class consisted of only those individuals who *purchased* an Agentra policy. . . . Moreover, the class list generated by Agentra was limited to individuals who bought a policy. Thus, the clear intent was to limit the class to purchasers of an Agentra policy.
>
> During the hearing, Plaintiffs, and Agentra agreed that the class description should be clarified to make it clear that, as stated in the class

---

[7] Doc. No. 68 at 10; *see also Abramson*, 2021 WL 3370057, at *5.

[8] Doc. No. 70-1 at 6–7.

4

notice, the settlement class is limited to only those individuals who purchased an Agentra policy and to whom notice was sent.[9]

So, the *Abramson* court modified the class description to include only those "who were sold an Agentra product"[10] (before, the class included people contacted "*regarding* the sale of a product"[11]) and approved the final settlement over Abboud's objection.

Why does all of this matter? It matters because, if Abboud is a member of the settlement class in the *Abramson* lawsuit, then her claims in this case might be barred by res judicata. Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit."[12] "The test for res judicata has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[13] Generally, res judicata applies to class actions.[14]

On the first element, Agentra argues that the parties are identical because Abboud is in the *Abramson* settlement class. Abboud counters that she is not a member of the settlement class because she did not actually purchase an Agentra policy or product. Abboud explains that her initial interpretation of the settlement

---

[9] *Abramson*, 2021 WL 3370057, at *5.

[10] *Id.* at *6.

[11] *Id.* at *3 (emphasis added).

[12] *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).

[13] *Id.*

[14] *In re Deepwater Horizon*, 819 F.3d 190, 198 (5th Cir. 2016).

5

class description "proved to be incorrect" when the *Abramson* court later clarified that the class encompassed only people who actually purchased an Agentra policy or product.[15]

The Court finds that genuine disputes of material fact prevent findings that Abboud was in the *Abramson* settlement class and thus that the parties in the *Abramson* suit and this suit are "identical or in privity."[16] Simply put, the parties genuinely dispute the material fact of whether Abboud was "sold an Agentra product."[17]

Agentra views the exchange between the *Abramson* court and Abboud's counsel at the fairness hearing as definitive proof that Abboud purchased an Agentra policy, but the Court disagrees. Although Abboud's counsel began his answer with "yeah," the substance of his response is that he represented to the *Abramson* court that, at most, Abboud was "signed up."[18] Signed up for what, though? Although Abboud's credit card was "charged," Agentra's own 30(b)(6) representative testified that "it should not have [been]" and that "that was an error."[19] Although Abboud

---

[15] Doc. No. 68 at 10.

[16] *Petro-Hunt*, 365 F.3d at 395.

[17] *Abramson*, 2021 WL 3370057, at *6.

[18] Doc. No. 70-1 at 7.

[19] Doc. No. 68 at 11 n.1. The Court notes that this quote comes from Abboud's combined brief in support of her motion for summary judgment and her response to Agentra's motion for summary judgment. Abboud cites to "Ex. A at 71:6–17" as the original source (presumably the 30(b)(6) deposition transcript) for the quote. However, the Court cannot locate any exhibits or appendices filed by Abboud. And "Ex. A" is apparently not a reference to Agentra's "Ex. A" (at Doc. No. 62-1) because Agentra's Exhibit A is a copy of the *Abramson* complaint. The point is: Abboud did not actually file any evidence in support of her argument that Agentra's 30(b)(6) representative made this statement. However, even lacking that piece of evidence, the Court would still reach the same result and find a genuine dispute of material fact—based solely on the other evidence and arguments.

admitted to the *Abramson* court of being "signed up" in some sense and for something, it was apparently not "signed up" for an actual agreement between Agentra and Abboud—again, according to Agentra's own 30(b)(6) representative: "[Abboud] did not sign the agreement."[20]

The parties genuinely dispute whether Abboud was sold an Agentra product and, therefore, the Court cannot find that Abboud's claims are barred under principles of res judicata. Because the Court finds that the first element of res judicata's test is not satisfied, it does not address the remaining three elements.

### ii. Agentra is entitled to summary judgment on Abboud's text-message claims because she consented to receiving the text messages.

The TCPA provision upon which Abboud relies for her text-message claims precludes liability if Agentra can show that Abboud gave "prior express consent" to receiving the text messages.[21] The TCPA does not define "prior express consent" and there is no "specific method by which a caller must obtain such prior express consent."[22] Courts have made the common-sense observation that "persons who knowingly release their phone numbers have in effect given their invitation or

---

[20] Doc. No. 68 at 11 n.1.

[21] 47 U.S.C. § 227(b)(1)(A).

[22] *In re Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961 at ¶ 49 (2015).

7

permission to be called at the number which they have given, absent instructions to the contrary."[23]

Agentra argues that Abboud consented to the text messages that she received. Agentra explains that its sales agents talk to the potential customers on the phone and get the customer's contact information and seek to enroll the customer in one of Agentra's products or policies. Agentra instructs all of its sales agents to "inform the consumers that these . . . text messages [about completing the enrollment process] are going to be sent."[24] Even as the sales agent is on the phone with the customer and typing the customer's information into the software, a "reminder . . . pops up" on the agent's screen reminding the agent to tell the customer that she will receive text messages as part of the enrollment process.[25] In sum, Agentra submitted evidence that the text messages sent to customers like Abboud are sent only after the customer speaks with a sales agent on the phone and exchanges information such as a phone number, payment method, and terms for the products that she agrees to purchase. And, because it is undisputed that Abboud received the text messages, Agentra argues that this establishes that Abboud "voluntarily provided [her phone number]

---

[23] *Morris v. Copart*, No. 4:15-cv-724-ALM, 2016 WL 6608874, at *8 (E.D. Tex. Nov. 9, 2016) (citing *In re Rules & Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752 at ¶ 31 (1992)).

[24] Doc. No. 61 at 18.

[25] *Id.*

8

to the sales agent she spoke with" and consented to receive the text messages.[26] And if Abboud did that, then Agentra is not liable.[27]

In response, Abboud does not counter that she did *not* give her consent to receive the text messages, and does not submit any evidence to that effect, nor any evidence that Agentra deviated from its standard consent practice in dealing with her. In other words, Abboud doesn't "submit[] evidence of contradictory facts."[28] Instead, she argues generally that "Agentra has failed to meet its burden" and cannot meet its burden "by simply asking the Court to assume [Agentra's] theory that Agentra could only possess Plaintiff's information if consent was given."[29]

First, the Court need not "assume" anything about Agentra's standard practice, because Agentra provided evidence of it. Second, Abboud provides no caselaw supporting her argument that Agentra can't win summary judgment based on the type of evidence it provided. Actually, the caselaw teaches the opposite. Like other kinds of competent summary-judgment evidence, "routine practice evidence"[30]

---

[26] *Id.*

[27] *Morris*, 2016 WL 6608874, at *8.

[28] *Lexon Ins. Co.*, 7 F.4th at 321 (cleaned up).

[29] Doc. No. 68 at 18.

[30] *See* Federal Rule of Evidence 406.

9

can achieve summary judgment when the other party fails to rebut it with counter-evidence.[31]

Because Agentra provided competent summary-judgment evidence showing that it is not liable for the text messages that it sent to Abboud and Abboud did not present contrary evidence, Agentra is entitled to judgment as a matter of law on Abboud's text-message claims.

### B. Abboud's Motion for Summary Judgment

There are several problems with Abboud's motion for summary judgment. First, she filed it after the deadline had passed and she did not seek the Court's leave to do so.[32] Second, Abboud's brief has substantive problems. She filed a combined brief in support of her motion for summary judgment and in response to Agentra's motion for summary judgment. If the Court very generously interpreted Abboud's

---

[31] *See, e.g.*, *Moody v. Am. Airlines, Inc.*, No. 4:06-CV-248-Y, 2008 WL 11349850, at *12 (N.D. Tex. Aug. 29, 2008):

> Moody was not selected for the premium-services-manager position because of her performance advisory. American produced the affidavit of the hiring manager, Kevin Kendrew, who states that Moody was not selected because she had a performance advisory in her record. He states that it is his routine practice to check a potential candidate's employment record to see if there are any performance advisories or other disciplinary matters present. Because Moody has presented no other evidence establishing that Kendrew's explanation is pretextual, American is entitled to summary judgment[.]

*See also, e.g.*, *Encompass Off. Sols., Inc. v. La. Health Serv. & Indem. Co.*, No. 3:11-CV-1471-P, 2013 WL 12310676, at *8 (N.D. Tex. Sept. 17, 2013):

> Encompass has also introduced evidence which suggests that it had a common and routine practice of speaking with insureds and explaining the nature of Encompass and its role in billing the insurer for services provided to the patient. . . . This evidence, unrebutted in the summary judgment record, is sufficient to indicate that Encompass was the assignee of medical benefits for the applicable claims at issue in this case.

[32] The deadline to file motions for summary judgment was January 13, 2022. *See* Doc. No. 59 at 1. Abboud filed her motion on January 14, 2022. Doc. No. 66.

brief, the singular argument that she advances in favor of summary judgment *for her* involves her text-message claims and is that Agentra's text-message software is an "automatic telephone dialing system" under the TCPA. But she loses on that claim because, as the Court explains above, Agentra has shown that Abboud consented to receiving the text messages. And the rest of Abboud's motion is responsive to Agentra's motion for summary judgment.

So, Abboud has failed to show that she is entitled to summary judgment on any of her claims.

## IV. Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Agentra's motion for summary judgment. The Court grants the motion with respect to Abboud's text-message claims and **DISMISSES WITH PREJUDICE** those claims. The Court denies the motion with respect to Abboud's phone-call claims.

The Court **DENIES** Abboud's motion for summary judgment.

The Court **ORDERS** the parties to submit a status report by September 28, 2022. In that status report, the parties should indicate which, if either, of the following days would be suitable to try this case: November 28 or December 5.

**IT IS SO ORDERED** this 6th day of September, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE